298 So.2d 518 (1974)
LEE COUNTY, Florida, Appellant,
v.
Southern WATER CONTRACTORS, INC., et al., Appellees.
No. 73-191.
District Court of Appeal of Florida, Second District.
August 9, 1974.
Rehearing Denied September 5, 1974.
*519 Frank A. Pavese, of Pavese, Shields, Garner, Haverfield & Kluttz, Fort Myers, for appellant.
Howard S. Rhoads, of Allen, Knudsen, Swartz, DeBoest, Rhoads & Edwards, Fort Myers, for appellee Southern Water Contractors, Inc.
James A. Franklin, Jr. of Henderson, Franklin, Starnes & Holt, Fort Myers, for appellee Barnard & Burk, Inc.
BOARDMAN, Judge.
In 1965 Lee County, Florida (Lee) entered into a written contract with Southern Water Contractors, Inc. (Southern) for the construction of a water distribution system in Lee County, Florida. Southern retained Renwick Knox d/b/a Tidelands Marine Construction Co. (Knox) as subcontractor to install the subaqueous portion of the water distribution system, part of which was under the Caloosahatchee River, from which this action arose. Lee retained the services of Barnard & Burk, Inc. (B & B), consulting engineers, to design and prepare plans and specifications; to direct, control and supervise the performance of the contract; and, to assure Lee of the completion of the contract by Southern according to the terms and specifications thereof.
The subaqueous portion of the contract was completed in 1967. It was certified to Lee by B & B as being installed in accordance with the plans and specifications. In reliance upon such certification, Lee paid Southern for that portion of the work. Subsequently, on or about March 19, 1969, the Norfolk Dredging Company, dredging in the channel under contract with the U.S. Corps of Engineers, struck and damaged a portion of the submerged pipeline. Southern assisted in the repair of the pipeline and billed Lee for the costs incurred. Upon demand, Lee refused to pay for these repairs. Southern filed suit for damages and declaratory relief against Lee, B & B, and Knox. Lee counterclaimed against Southern for a determination that Southern failed to comply with their contract and sought damages arising out of the said breach. Lee also filed a cross-claim against B & B for damages in the event Southern prevailed against Lee. Lee also filed a third-party complaint against Norfolk Dredging asking that in the event the other parties were found free from liability that Norfolk Dredging be found liable.
Upon the numerous and complex pleadings filed, a trial by jury was had before the experienced trial judge who conducted a fair and impartial trial, maintaining order in a case where, due to the several issues involved, chaos could have resulted. B & B moved for, and was granted, directed verdicts in its favor. On Lee's third-party complaint against Norfolk Dredging a directed verdict was entered in favor of Norfolk. The case went to the jury on claims between Southern, Lee and Knox. The jury found in *520 favor of Southern on its damages claim against Lee; against Lee on its counterclaim against Southern, and, on Southern's claim against Knox, in favor of Knox. This timely appeal by Lee followed.
Our review in this matter is limited, of necessity, to the two arguments preserved by Lee:
I The court erred in directing a verdict in favor of Barnard & Burk, Inc.
II The rights and obligations of the parties were so intertwined that the error of the court in directing a verdict as to Barnard & Burk, Inc. infected and invalidated the entire judgment.
As to the first point raised by Lee, we are constrained to agree. The contract between Lee and B & B provided, in pertinent part:
III. Supervision of Construction

(a) Provide general supervision of construction including periodic visits to project during construction, establishment of base line and control elevations from which work can be started, progress reports to the Owner, checking and approving monthly and final payment estimates for Contractor, and checking of shop drawings, equipment schedules and manufacturers' data sheets and drawings.
* * * * * *
(b) Resident Supervision

The Engineers shall furnish a resident representative during all phases of construction to protect the County's interests and to assure conformity with Plans and Specifications.
The gravamen of Lee's cross-claim against B & B is that B & B failed to adequately supervise and inspect the installation pursuant to its obligation under the contract. Whether this is construed to be a suit for breach of contract or a suit for negligent violation of a duty created by contract, the standard of proof is essentially the same.[1] As in the case of other professionals, an engineer has a responsibility to his client to exercise reasonable care and skill in the performance of his duties. Cf. Bayshore Development Co. v. Bonfoey, 1918, 75 Fla. 455, 78 So. 507. This responsibility with respect to the supervision of construction is well stated[2] in an article entitled "Professional Negligence of Architects and Engineers" which appears in 12 Vand.L.Rev. 711 wherein it is said (page 717):
It is customary to provide in the contract that the architect or engineer shall superintend the erection of the structure in accordance with the plans and specifications. It is the duty of the architect to prevent the structure from being erected so that it will contain a material variation from the plans and specifications. One court has stated that architects are supposed to snoop, pry and prod. However, the supervisor is not an insurer that contractors will perform their work. He must use reasonable care to prevent material deviations from the plans and specifications and to prevent substandard workmanship. If he fails to use reasonable care, he is liable to the owner for the defects which could have been eliminated if he had properly performed his obligation... .
The pipeline under the river was required to have a six foot cover, and in the *521 channel it was to be laid at a depth of at least thirty feet. There was evidence that when the pipe was examined after the accident it was in a zigzag configuration all the way across the river and that the pipe was four to six feet above the required depth in the channel. Two experts testified that there was no way for the pipe to have moved to that position had it been properly laid in the correct location in the first instance.
B & B's resident engineer testified that he was not present when the pipe was placed in the river. He said that after the pipe was laid he ascertained its depth through the use of a man in a boat making measurements with a wooden stick. However, one expert testified that the proper procedure to be followed in measuring the depth would be to have a diver on the bottom to place the end of the measuring stick against the top of the pipe. B & B never checked to see if there was actually a backfill over the pipe so as to give it the required six foot cover. When considered in its entirety, we believe the record contained sufficient evidence to present a jury question on whether B & B had properly performed its obligations.
Turning to the second point, Lee contends that if there is to be a reversal as to B & B, the whole judgment should be reversed. Lee argues that when the judge directed a verdict for B & B, this was tantamount to him telling the jury that the pipeline was properly located.
In support of its argument, Lee cites a line of authority for the proposition that where a judgment is joint in form though several in effect, a reversal as to one party may result in a reversal as to the others where the interests of the parties are so intertwined as to be inseparable. E.g., Noll v. Byorick, Fla.App.3rd, 1959, 108 So.2d 67; Merryman v. Goins, 1942, 190 Okla. 442, 124 P.2d 729; Broudy-Kantor Co. v. Levin, 1923, 135 Va. 283, 116 S.E. 677. However, many of these cases involve the distribution of a sum certain between hostile claimants. In this case, Southern and B & B were not joint tortfeasors, and the claims of Lee against each of them were predicated upon separate contracts.
In Fitzpatrick v. Sheppard, 346 Pa. 240, 29 A.2d 475, 1943, the impact from a collision between automobiles driven by Sheppard and McCombs resulted in one of the automobiles striking a pedestrian. The pedestrian sued both drivers for her injuries. The jury returned a verdict against Sheppard and in favor of McCombs. Both verdicts were set aside for a new trial. However, there was no error in the proceedings between the plaintiff and McCombs. The question posed was whether an error in the proceedings as between the plaintiff and Sheppard was sufficient to bring Dr. McCombs back in for a second trial. The court said:
... The plaintiff's position is clear. If she is required to proceed against Sheppard alone she fears that another jury might conclude that the doctor was at fault and Sheppard was not. That, however, is not a legal reason for requiring Dr. McCombs to stand trial again when he has been exonerated by a jury after trial without error.
The issues between Lee and Southern Water were submitted to the jury upon proper instructions by the court. The jury returned a verdict for Southern. Lee has not attacked the sufficiency of the evidence to support this verdict. While it is possible that the jury could have been influenced by the court having directed a verdict for B & B (which we now hold to have been erroneous), we can only speculate this to be so. The judge was circumspect in the language used to explain to the jury that he was directing the verdict. We believe it would be improper to set aside Southern's verdict against Lee simply because the court erred in dismissing B & B during the course of the trial.
We are not passing upon B & B's contention that the jury verdict absolving *522 Southern had the effect of determining that the pipe was properly located so as to render moot Lee's claim against B & B. This is an argument which may be properly raised upon remand by a plea of estoppel by judgment or collateral estoppel. The trial court will then have the opportunity to determine whether Southern's judgment against Lee precludes Lee from further pursuing its claim against B & B.
The judgment in favor of Southern is affirmed. The judgment in favor of B & B is reversed, and the case is hereby remanded for further proceedings consistent with this opinion.
HOBSON, Acting C.J., and GRIMES. J., concur.
NOTES
[1] We must reject Lee's contention that in agreeing to furnish supervision "to assure conformity with the Plans and Specifications," B & B became a guarantor of this result.
[2] See, 3 I. Werbin, Legal Cases for Contractors, Architects, and Engineers 369 (1961).