Carol A. BARTAK, Special Administratrix for the Estate of John A. Bartak, Deceased, Appellee,

v.

BELL–GALYARDT & WELLS, INC., Appellant,

Hammel-Green-Abrahamson, Inc.; Reid Burton Construction, Inc., Appellees,

Leslie Koss, Appellant,

Curran Nielson, d/b/a Nielson Roofing a/k/a Curran V. Nielson Painting and Decorating, Inc., Appellee (two cases).

Carol A. BARTAK, Special Administratrix for the Estate of John A. Bartak, Deceased, Appellee,

v.

RAPID CITY AREA SCHOOL DISTRICT NO. 54; Bell-Galyardt & Wells, Inc.; Hammel-Green-Abrahamson, Inc.;

Reid Burton Construction Co., Inc., Appellant,

Leslie Koss, Kinning and Reil, Inc.

Curran Nielson, d/b/a Nielson Roofing a/k/a Curran v. Nielson Painting and Decorating, Inc., Appellee.

Carol A. BARTAK, Special Administratrix for the Estate of John A. Bartak, Deceased, Appellee,

v.

RAPID CITY AREA SCHOOL DISTRICT NO. 54, Appellee,

Bell-Galyardt & Wells, Inc., Appellant,

Hammel-Green-Abrahamson, Inc.; Reid Burton Construction, Inc., Appellees,

Leslie Koss, Appellant,

Kinning and Reil, Inc., Appellee,

Curran Nielson, d/b/a Nielson Roofing a/k/a Curran V. Nielson Painting and Decorating, Inc., Appellee.

**524**

Carol A. BARTAK, Special Administratrix for the Estate of John A. Bartak, Deceased, Appellee,

v.

RAPID CITY AREA SCHOOL DISTRICT NO. 54; Bell-Galyardt & Wells, Inc.; Hammel-Green-Abrahamson, Inc., Appellees,

Reid Burton Construction Co., Inc., Appellant,

Leslie Koss and Kinning and Reil, Inc., Appellees,

Curran Nielson, d/b/a Nielson Roofing a/k/a Curran V. Nielson Painting and Decorating, Inc., Appellee.

Nos. 79–1517, 79–1518, 79–1536, 79–1716 and 79–1717.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1980.

Decided Aug. 12, 1980.

Edward C. Carpenter, Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, S. D. (argued), and William G. Porter, Rapid City, S. D., on brief, for Bell-Galyardt.

Franklin J. Wallahan, Hanley, Wallahan & Konenkamp, Rapid City, S. D., made argument for Reid Burton Co.

George H. Moyer, Jr., Moyer, Moyer & Egley, Madison, Neb., Robert L. Varilek, Rapid City, S. D., for Bartak.

Charles M. Thompson, May, Adam, Gerdes & Thompson, Pierre, S. D., for Nielson.

Robert F. LaFleur, Rapid City, S. D., for Hammel-Green-Abrahamson, Inc.

Before STEPHENSON and McMILLIAN, Circuit Judges, and THOMAS,* Senior District Judge.

McMILLIAN, Circuit Judge.

This is an appeal from all the judgments entered in a diversity construction site wrongful death action instituted by Carol A. Bartak, surviving spouse of and special administratrix for the estate of John A. Bartak (Bartak), against several defendants. Reid Burton Construction Co. (the general contractor) and Bell-Galyardt & Wells, Inc. (the architects) were the only defendants found negligent. Each appeals the findings of negligence against it. The architects also appeal denial of their contractual indemnity claim against the general contractor. The general contractor likewise appeals denial of its contractual indemnity claim against Curran V. Nielson Painting & Decorating, Inc. (the subcontractor). The district court erred in refusing to give a contributory negligence instruction as requested by five defendants; therefore, we reverse and remand for a new trial on the negligence issues.[1]

In April of 1974, the architects entered into a contract with the Rapid City Independent School District to provide architectural services in the construction of a new high school. Because that contract required the architects to associate with a nationally recognized architectural firm with expertise in the design and construction of school buildings, the architects entered a separate agreement with the Minneapolis firm of Hammel-Green-Abrahamson, Inc. (the consultants). The architects chose Leslie L. Koss as their full-time project representative to remain on the job site throughout the construction phase of the project.

In November of 1975, the school district awarded three prime contracts. The general construction contract was awarded to the general contractor. Amelco received the electrical contract. The mechanical contract, which included the plumbing and sprinkler system, was awarded to Bartak's employer, Kinning & Reil, Inc. (employer). The general contractor subcontracted the fiberboard roof decking portion[2] of its contract to the subcontractor.

The fiberboard decking was installed by the subcontractor in May of 1977. On June 20, 1977, Bartak and fellow worker Steve Cutshall climbed into a "dead space," 14⅝ inches wide by 100 feet long, in the ceiling of the school gymnasium in order to reconnect a sprinkler pipe. A piece of fiberboard decking gave way under Bartak's weight and he fell thirty or forty feet to the gymnasium floor. Injuries from that fall resulted in Bartak's death a few days later.

Bartak's widow brought this negligence action against: (1) the school district, (2) the architects, (3) the consultants, (4) Leslie Koss as an individual, (5) the general contractor, and (6) the subcontractor.

Each of the defendants filed a cross-claim seeking indemnity or contribution against all of the other defendants, except that the two architectural firms did not cross-claim against one another.

The school district was dismissed on motion for summary judgment. The consultants were dismissed on a motion for directed verdict at the conclusion of all the evidence.

---

* The Honorable Daniel H. Thomas, United States Senior District Judge for the Southern District of Alabama, sitting by designation.

1. The new trial will, of course, involve only appellants. The other original defendants have already received a jury verdict of 0% negligence.

2. This was apparently a false, or dropped, ceiling of a material called Petrical.

The court combined the architects and Leslie Koss for purposes of the instructions and the verdict. The court refused to submit to the jury the defenses of contributory negligence and assumption of the risk, and also refused to submit to the jury special interrogatories on the issues of indemnity and contribution.

The jury found no negligence by the subcontractor. The jury returned a verdict against the architects and Leslie Koss and a verdict against the general contractor. In response to special interrogatories, the jury found the architects and Leslie Koss thirty-five percent (35%) negligent and the general contractor sixty-five percent (65%) negligent. The jury assessed general damages of $590,000.00 and special damages of $10,107.72.

Thereafter, the court asked for briefs on the indemnity and contribution issues and issued its opinion in favor of the subcontractor. *Bartak v. Bell-Galyardt & Wells, Inc.*, 473 F.Supp. 737 (D.S.D.1979).

On appeal the architects and the general contractor contended that the trial court committed prejudicial error in refusing to submit to the jury issues of fact concerning the contributory negligence of Bartak. We agree.

Contributory negligence was one of the main theories of both appellants. Cutshall, the worker who was with Bartak at the time of the accident, testified that the dead space was enclosed except for a three-foot wide opening left by a missing panel. After entering the dead space, they had to walk sideways because it was only 14⅜ inches wide and had to crouch because of the low ceiling. Cutshall did not like being in the dead space because it was so small and asked Bartak if they could not get to the pipes some other way. About fifty feet into the dead space, they came to a four-inch electrical conduit which ran up through the middle of the opening. Cutshall told Bartak that he did not think anyone could get past it. Bartak squeezed past the conduit first. Cutshall was still in the process of squeezing past it when Bartak fell. While Cutshall did not recall any specific instructions that suspended pipes were to be worked on from below, he was aware that that was how such work was customarily accomplished by their employer. It was undisputed that, at their employer's request, lifts were available for access to the pipes from below.

There was testimony from others on Bartak's conduct. Notwithstanding that their employer required safety ropes to be used by anyone working more than eight feet from the ground, Bartak and Cutshall walked across both a fifteen-inch beam that was over thirty-six feet from the floor and a wall the top of which was over thirty feet above the floor without safety ropes. Also the general contractor's job superintendent testified they would have had to go over or under safety rails which blocked the opening to the dead space.

The general contractors had proposed instructions 7, 8 and 9 on the issue of contributory negligence, and instruction 20, a special interrogatory on the percentage of negligence attributable to Bartak. The architects had proposed instruction 11 on contributory negligence and instruction 32, a special interrogatory. Nevertheless, the trial court rejected the above instructions and gave instead instruction 22 which instructed the jury that, as a matter of law, Bartak was not contributorily negligent and that the jury was to disregard any evidence of negligence on his part.

The burden of proof is a substantive matter, governed by state law. *Chicago, Rock Island & Pacific R.R. v. Breckenridge*, 333 F.2d 990, 991 (8th Cir. 1964). If a matter is an affirmative defense under state law, it will be treated as such in a diversity action in a federal court of that state. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1272 at 317 (1969). When contributory negligence is pleaded as an affirmative defense, under South Dakota law, the burden is on the defendant to put in evidence on that theory. *Cf. Thomas v. St. Mary's Roman Catholic Church*, 283 N.W.2d 254, 259 (S.D.1979) (assumption of risk as a defense); *see Smith v. Chicago, Minneapolis & St. Paul Ry.*, 4 S.D. 71, 55

N.W. 717 (1893). Contributory negligence and comparative negligence are questions of fact which, in South Dakota, may be withdrawn from jury considerations only when the facts are not in dispute and those facts lead to one inescapable conclusion. *Schultz & Lindsay Construction Co. v. Erickson*, 352 F.2d 425, 432 (8th Cir. 1965) (applying South Dakota law); *Ricketts v. Tusa*, 87 S.D. 702, 214 N.W.2d 77, 79 (1974); *Myers v. Quenzer*, 79 S.D. 248, 110 N.W.2d 840, 843 (1961). Although the substance of instructions is a matter of state law, procedural matters regarding the submission of requested instructions are governed by federal law. *See generally* 1A, Pt. 2 J. Moore, Moore's Federal Practice ¶ 0.314(2) (2d ed. 1979). Each party is entitled to have the jury instructed on its theory of the case if there is any competent evidence in support of such theory and the instruction is properly requested, even though the theory may be controverted by some evidence of the opposing party. *See Ninio v. Hight*, 385 F.2d 350, 352 (10th Cir. 1967) (applying Colorado law); *Zakrzewski v. Hyronimus*, 81 S.D. 428, 136 N.W.2d 572, 574 (1965). This also holds true where the jury was instructed on the party's alternate theory of the case. *Frankel v. Todd*, 393 F.2d 435, 440 (3d Cir. 1968) (applying Pennsylvania law); *Jahnig v. Coisman*, 283 N.W.2d 557, 561 (S.D.1979). Refusal to instruct the jury on each material theory is reversible error. *Flentie v. American Community Stores Corp.*, 389 F.2d 80, 82 (8th Cir. 1968) (applying Iowa law); *Miller v. Baken Park, Inc.*, 84 S.D. 624, 175 N.W.2d 605, 609, *modified*, 85 S.D. 133, 178 N.W.2d 560 (1970). Conversely, it is reversible error to submit to the jury an issue as to which there is no evidence. *Scott v. Conroy*, 577 F.2d 13 (8th Cir. 1978) (applying Missouri law); *Sheffield v. Eveleth*, 17 S.D. 461, 97 N.W. 367 (S.D.1903). *See Jennings v. Hodges*, 80 S.D. 582, 129 N.W.2d 59, 64 (S.D.1964).

■ Although plaintiff states that there was no competent evidence as to Bartak's contributory negligence, the testimony summarized above would tend to show that Bartak knew or should have known that it was dangerous for him to enter the dead space. Rather, her argument amounts to an assertion that the above evidence was controverted. These facts were in dispute; the contributory negligence issue could not be withdrawn from the jury. Because we must assume on appeal that this evidence was true, it warranted the giving of an instruction on contributory negligence. Defendants put in evidence on the defense of contributory negligence and made proper requests for instructions on contributory negligence and special interrogatories on comparative negligence. Therefore, the refusal to give those instructions was reversible error. We reverse on that basis and remand for a new trial.

Because the case must be reversed and remanded for a new trial for the refusal to give proper instructions, ordinarily we would not have to reach the appellants' other allegations of error. But in the interests of avoiding possible future appeals, we will discuss those allegations of error likely to recur at the new trial.

Because several contentions of error relate to the architect's standard of care, a discussion of that topic is included. At trial, lay testimony was admitted as to the adequacy of both the architects' preparation of the plans and the architects' supervision of the construction through their agent, Leslie Koss. There was no expert testimony on these points. The court rejected a proposed instruction on the standard of care applicable to architects and a special interrogatory as to whether any negligence arose from preparation of plans or from supervision, and denied the architects' motion for a directed verdict on the issue of negligence in the preparation of plans. The case went to the jury on a general instruction that plaintiff alleged "negligence by all or any of the defendants in the design, engineering, fabrication, construction, erection, inspection and supervision" (No. 8) as well as specific instructions that the architects were responsible for damages caused by negligent performance of their contractual obligation, which included the duty "to determine and require the contractor to construct the project safely." The jury found the architects 35% negligent.

In diversity cases, state law controls the issue of architect's liability. *Aetna Insurance Co. v. Hellmuth, Obata & Kassabaum, Inc.*, 392 F.2d 472 (8th Cir. 1968). While the South Dakota Supreme Court has not dealt specifically with the standard of care for architects, its decisions indicate that it would, like most jurisdictions, apply a common law standard similar to that for other professions. *Mueller v. Mueller*, 221 N.W.2d 39 (S.D.1974) (physician); *Block v. McVay*, 80 S.D. 469, 126 N.W.2d 808 (1964) (physician); *Hansen v. Isaak*, 70 S.D. 529, 19 N.W.2d 521 (S.D.1945) (physician). *See generally* W. Prosser, The Law of Torts § 32, at 161–66 (4th ed. 1971). This Circuit has stated the standard for architects as follows:

> The standard of care applicable is that of ordinary reasonable care required of a professional skilled architect under the same or similar circumstances in carrying out his technical duties in relation to the services undertaken by his agreement. This includes the knowledge and experience ordinarily required of a member of that profession and includes the performance of skills necessary in coping with engineering and construction problems, which skills are ordinarily not possessed by laymen.

*Aetna Insurance Co. v. Hellmuth, Obata & Kassabaum, Inc., supra*, 392 F.2d at 477 (negligent supervision under Missouri law). Deviation from "customary practice" does not, however, necessarily prove negligence if there is evidence that the deviation was reasonable. *Paxton v. Alameda County*, 119 Cal.App.2d 393, 259 P.2d 934, 942 (1953) (careful computations before deviating from customary practice). The degree of skill and care that may be required of architects is a question of fact for the jury. *Miller v. DeWitt*, 59 Ill.App.2d 38, 208 N.E.2d 249, 284 (Ill.App.1965), *rev'd on other grounds*, 37 Ill.2d 273, 226 N.E.2d 630

(Ill.App.1967). "The formula under which this is usually put to the jury is that he must have the skill and learning commonly possessed by members of the profession in good standing; and he will be liable if harm results because he does not have them." Prosser, *supra*, at 162.

An architect may be, of course, liable for negligence in preparing or approving plans. *See* Comment, *Architect Tort Liability in Preparation of Plans and Specifications*, 55 Cal.L.Rev. 1361 (1967); Annot., 59 A.L.R.2d 1081 (1958) and cases cited therein. South Dakota also recognizes that an architect who undertakes supervision of construction may be liable for negligence in performing supervisory duties. *Duncan v. Pennington County Housing Authority*, 283 N.W.2d 546 (S.D.1979). *See generally* Annot., 59 A.L.R.3d 869 (1974) and cases cited therein. The latter duty of care in supervision is separate and distinct from the duty of care in planning[3] and arises where the architect has assumed— whether by contract or regulation or voluntarily—supervisory responsibilities which transcend merely assuring that the plans are followed. *Id.* Where the contract creating the responsibility to supervise is ambiguous on safety, whether a duty of care arises may be a jury question.[4] *Duncan v. Pennington County Housing Authority, supra*, 283 N.W.2d at 548. Where the contract establishes a duty of care, breach of the contract may create tort liability to third persons who would be exposed to risk by negligence in performing the contract. *Weeg v. Iowa Mutual Insurance Co.*, 82 S.D. 104, 141 N.W.2d 913, 916 (S.D.1966); *see* Note, *Liability of Architects and Engineers to Third Parties: A New Approach*, 53 Notre Dame Law. 306 (1978). An architect may be held liable for negligence in planning or supervision or both. *Conklin v. Cohen*, 287 So.2d 56, 61 (Fla.1973), *con-*

---

**3.** The architects' liability for negligent supervision is also separate and distinct from the general contractor's liability for negligence in construction. 65 C.J.S. Negligence § 95c.

**4.** This was not a case where the architect assumed only a general duty of supervision. Nor

was the contract ambiguous on whether the obligation to supervise created a duty of care for safety. Therefore, the court was correct in submitting the negligence-in-supervision claim to the jury.

*formed*, 291 So.2d 81 (1974). The professional standard of care is applied to supervisory activities as well as to preparation of plans. *Lee County v. Southern Water Contractors, Inc.*, 298 So.2d 518, 520 (Fla.App. 1974); *Miller v. DeWitt, supra*, 208 N.E.2d at 275.

The trial of this case took five weeks and produced twenty-two volumes of transcript. Issues were raised regarding the architects' negligence and supervision, as propounded by Bartak, as well as their negligence in planning, as propounded by the co-defendants/cross-claimants. The five co-defendants/cross-claimants argued distinctly and mutually inconsistent theories, each intended to establish its own proponent's lack of liability at the expense of the others. This is sufferable and in fact is the purpose of litigation. It cannot be denied, however, that the evidence grew bewildering in proportion to its sheer volume and complexity. In such a situation, it is especially important for the instructions to separate the issues and set out the standard applicable to each. It was not sufficient to submit the entire matter to the jury under the general negligence instructions described above. Therefore, on retrial, the jury should be instructed on the professional standard of care applicable to architects.

▆▆▆▆ Further, in the majority of cases involving an architect's liability for harm, there can be no finding of negligence unless there is expert testimony to support it, because laymen would be unable to understand highly technical architectural requirements without hearing other architects testify as to those requirements. *Aetna Insurance Co. v. Hellmuth, Obata & Kassabaum, Inc., supra*, 392 F.2d at 478. There is, however, a "common knowledge" exception to the requirement of expert testimony; the jury is competent to pass on issues of negligence that do not require a knowledge of professional skills. *Id.*; *Thomas v. St. Mary's Roman Catholic Church, supra*, 283 N.W.2d at 257. Rule 43(a) of the Federal Rules of Civil Procedure provides that evidence shall be admitted if it would be admissible under either state or federal law,

whichever is more permissive. 9 Wright & Miller, *supra*, § 2403 at 313. Where the subject matter is within the knowledge or experience of laymen, expert testimony is superfluous. *Bridger v. Union Ry.*, 355 F.2d 382, 387 (6th Cir. 1966); *Kleinsasser v. Gross*, 80 S.D. 631, 129 N.W.2d 717, 721 (1964). Whether to admit expert testimony rests in the discretion of the trial judge, whose decision will not be reversed unless it is clearly erroneous. Rule 703, Fed.R.Evid.; *Bauman v. Centex Corp.*, 611 F.2d 1115, 1120 (5th Cir. 1980). "Appellate cases are not consistent in indicating what things laymen are capable of determining for themselves; this is probably due to the broad trial court discretion in determining admissibility of expert evidence . . . but in almost all cases [of architect's liability] the jury's inquiry would be aided by expert testimony." Comment, *supra*, 55 Cal.L.Rev. at 1362–63.

On retrial it would be preferable for the trial court to distinguish clearly those issues requiring expert testimony from those it determines to be within the common knowledge exception. While we do not find reversible error in the trial court's admission of only lay testimony, it appears from the record that the negligence-in-planning issue required a technical analysis of the specifications, drawings and manufacturer's specifications that was beyond the competence of ordinary lay persons. The jury inquiry would have been aided by expert testimony. Accordingly, only persons who qualify as experts should be allowed to testify on this issue. In contrast, the negligence-in-supervision issue appears to come within the "general knowledge" exception allowing lay testimony. The fact which argues most persuasively for that result is that, despite the magnitude of the project, supervision of it was entrusted to a layman. Koss was not an architect.

A related issue results from the court's refusal to give the architect's proposed special interrogatory as to, if the architects were found negligent, whether the negligence was in planning or in supervision. Whether the negligence arose from the

preparation of plans or from supervision was significant because, as the court held, the general contractor would have been contractually obligated to indemnify the architects for damages arising from the performance of work, but not for the preparation of plans. *Id.* at 739–40. At trial the co-defendants/cross-claimants had explicitly attacked the architects' preparation of the plans. In denying the architects' claim of indemnity against the general contractor, the trial court made an express finding that "the jury verdict as it related to Bell-Galyardt & Wells [the architects] and Leslie Koss was based on the negligent preparation of drawings, designs or specifications." *Bartak v. Bell-Galyardt & Wells, supra,* 473 F.Supp. at 740. In her brief before us, however, plaintiff states unequivocally that "plaintiff neither proved, nor attempted to prove, that the plans, specifications and drawings were negligently prepared."

We note that federal, not state, law is controlling on the submission of special interrogatories. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2502 at 487 (1971). Rule 49(b) of the Federal Rules of Civil Procedure permits the submission of special interrogatories. *Lowery v. Clouse,* 348 F.2d 252, 261 (8th Cir. 1965). There is no practical difference here, however, because South Dakota law also permits the giving of special interrogatories on comparative negligence. *Duncan v. Pennington County Housing Authority, supra,* 283 N.W.2d 546. The trial court has discretion in submitting or refusing special interrogatories. *Lowery v. Clouse, supra,* 348 F.2d at 260; *see Orrison v. City of Rapid City,* 76 S.D. 145, 74 N.W.2d 489, 495 (S.D. 1956); 9 Wright & Miller, *supra,* § 2505 at 492. Again, the trial court's refusal to give the special interrogatory did not rise to the level of reversible error. Yet with evidence admitted and instructions given on diverse theories of liability, the trial court's holding, on the indemnity claim, that the evidence would only have supported a finding of negligence in planning gave the appearance of second-guessing the jury. On retrial the special interrogatory should be submitted to the jury.

Both the general contractor and the architects contend that the trial court erred in allowing into evidence projections by an economist regarding Bartak's loss of future income. We rejected this contention in *Taenzler v. Burlington Northern,* 608 F.2d 796 (8th Cir. 1979). They also contend that the court erred in refusing to instruct the jury that the damage award would not be subject to federal income tax. The Supreme Court in *Norfolk & Western Ry. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), recently held in a wrongful death action brought under the Federal Employers' Liability Act that it was error to refuse to instruct the jury that "your award will not be subject to any income taxes, and you should not consider such taxes in fixing the amount of your award." The district court should consider this ruling in determining this issue under South Dakota law. We have considered the numerous other contentions raised in the general contractor's briefs and determined that they are without merit.[5]

Accordingly, we reverse and remand to the district court for a new trial.

---

5. For example, the general contractor contended that the consultants should have been held liable, as joint venturers, for the local architects' negligence. This contention was obviously irrelevant to the negligence issue and furthermore could only have been raised by the architects, who chose not to cross-claim against the consultants. Similarly, the general contractors contended that the court should have instructed that negligence by Bartak's employer could not be imputed to the general contractor. Not only does that contention misstate the concept of imputed negligence (negligence imputed to the one injured), but also the court had correctly instructed on the contractual relation between those companies.