Jerome A. JAEGER, Appellee,

v.

**HENNINGSON, DURHAM & RICHARDSON, INC., Appellant.**

Frank SELL, Jr., Appellee,

v.

**HENNINGSON, DURHAM & RICHARDSON, INC., Appellant.**

No. 82–1993.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1983.

Decided Aug. 5, 1983.

Gale Fisher, P.C., Sioux Falls, S.D., for appellees.

Harold C. Doyle, Edward J. Leahy, May, Johnson, Doyle & Becker, P.C., Sioux Falls, S.D., for appellant.

Before BRIGHT, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

BRIGHT, Circuit Judge.

Henningson, Durham & Richardson (HDR), an architectural firm, appeals from a judgment entered on a jury verdict in federal district court[1] in favor of Jerome A. Jaeger and Frank Sell, Jr. for injuries they received as a result of a construction site accident. For the reasons outlined below, we affirm the judgment of the district court.

I. *Background.*

On February 25, 1977, HDR entered into a contract with Midland National Life In-

---

1. The Honorable Fred J. Nichol, United States Senior District Judge for the District of South Dakota.

surance Company to perform architectural services on an office building to be constructed in Sioux Falls, South Dakota. Swift Brothers Construction Company, the general contractor on the project, engaged Egger Steel Company as a subcontractor to do steel fabrication. Egger Steel Company in turn contracted with L.H. Sowles Construction Company to do the steel erection. L.H. Sowles employed Jaeger and Sell.

The contract between Midland and HDR required HDR to prepare drawings and specifications setting forth in detail the requirements for the construction of the entire structure. The contract also required HDR to review and approve shop drawings and other submissions for conformance with information contained in the specifications, blueprints and drawings. Paragraph 1.1.18 of the agreement provided:

The Architect shall review and approve shop drawings, samples, and other submissions of the Contractor only for conformance with the design concept of the Project and for compliance with the information given in the Contract Documents.

Pursuant to the contract, HDR submitted drawings and specifications to Egger. From the specifications, Egger prepared shop drawings. These detailed drawings were prepared so that the necessary materials could be identified, categorized, and the components built in Egger's shop, and, thereafter, assembled in the field.

The specifications at issue in this case provided that steel stair pans could be fabricated from 14-gauge steel, but the landing pans had to be fabricated from 10-gauge steel with angle supports as required. However, one particular shop drawing erroneously called for 14-gauge steel for the landing pan. The project architect for HDR failed to notice this mistake in the shop drawings. HDR reviewed this shop drawing and approved it by placing its stamp on the drawing, with a notation to "furnish as noted." After HDR's review, HDR returned the shop drawing to Egger. Egger then fabricated the stairs in accordance with the drawing. Egger did not noti-

fy HDR that it changed the gauge of the landing pan steel.

On May 9, 1978, the 14-gauge steel landing pan was delivered to the job site to be erected as part of the steel stairs. After placing the landing pan into its framework, Jaeger walked out onto the pan. Sell followed him with the welding equipment and wedges. The pan then collapsed through the framework, causing Jaeger and Sell to fall 16 feet to the floor below. They sustained serious injuries.

Jaeger and Sell brought independent actions against HDR, alleging that HDR, as the project architect, negligently failed to detect and correct the shop drawings providing for a 14-gauge steel stairway landing pan. Jaeger and Sell alleged that if the landing pan had been fabricated with 10-gauge steel with angle stiffeners, as required by the specifications, it would not have collapsed. The district court consolidated their cases for trial. A six-person jury returned a $35,000 verdict for Jaeger and a $250,000 verdict for Sell.

On appeal, HDR argues that (1) the district court erred in not granting HDR's motion for a directed verdict because Jaeger and Sell failed to present any expert testimony to prove HDR's negligence, (2) the district court erred by admitting evidence of subsequent remedial measures, and (3) the cross-examination by the trial judge of defense witnesses prejudiced HDR and deprived HDR of a fair trial.

II. *Discussion.*

A. *Expert Testimony.*

HDR asserts initially that Jaeger and Sell's failure to present expert testimony to establish the appropriate standard of care and a violation of that standard precludes a finding that HDR was liable for negligence. We disagree.

In diversity cases, state law controls the issue of an architect's liability. *Bartak v. Bell-Galyardt & Wells, Inc.,* 629 F.2d 523, 529 (8th Cir.1980). In *Bartak,* we construed South Dakota law as applying the common law standard of care for architects. *Id.*

Furthermore, we observed that in a majority of cases involving an architect's liability for harm, there can be no finding of liability unless there exists expert testimony to support it. *Id.* at 530; *see also Aetna Insurance Co. v. Hellmuth, Obata & Kassabaum, Inc.,* 392 F.2d 472, 478 (8th Cir.1968). This rule is premised on the assumption that laymen are unable to understand highly technical architectural requirements without hearing other architects testify as to those requirements. There exists, however, a "common knowledge" exception to the requirement of expert testimony. This exception permits juries to pass on issues of negligence that do not require a knowledge of professional skills. *See Id.*

■ There is nothing so highly technical about the facts of this case which is not within the common experience or understanding of the average layman. The specifications called for the landing pans to be made from 10-gauge steel with angle stiffeners as required. The shop drawing, however, provided that the landing pan in question should be made from 14-gauge steel without angle stiffeners or supports. Moreover, we observe that there was expert testimony supporting the view that had the pan been built with 10-gauge steel and angle stiffeners, it would not have collapsed under circumstances similar to those of the accident in this case.

Moreover, this court has drawn a distinction between actions against architects for negligence-in-preparing plans and actions for negligence-in-supervising plans. *See Bartak v. Bell-Galyardt & Wells, Inc.,* supra, 629 F.2d at 530. We have observed that negligence-in-preparing actions typically require expert testimony, while negligence-in-supervision actions typically come within the "common knowledge" exception. *Id.*

The gravamen of the complaints here is that HDR negligently failed to supervise the shop drawings pursuant to the contract and that this negligence was the proximate cause of the injuries to Jaeger and Sell. Accordingly, we determine that the actions before us are negligence-in-supervision ac-

tions and that expert testimony on the appropriate standard of care was not required.

**B. *Evidence of Subsequent Remedial Measures.***

HDR argues that the trial court erred by admitting into evidence exhibits 7, 8, 21 and 23. Exhibits 7 and 8 are photographs of the landing pan which replaced the one Jaeger and Sell fell through. Egger fabricated this replacement landing pan from 10-gauge steel with angle supports. Exhibits 21 and 23 are letters discussing the specifications for landing pans written by HDR employees after the accident. HDR asserts that these exhibits constitute evidence of subsequent remedial measures that should have been excluded.

Rule 407 of the Federal Rules of Evidence requires exclusion of evidence of subsequent remedial measures only when it is offered as proof of negligence or culpable conduct. The rule permits such evidence, however, for other purposes, including ownership or control, existence of duty, feasibility of precautionary measures, if controverted, and impeachment. *See, e.g., Powers v. J.B. Michael & Co.,* 329 F.2d 674, 677 (6th Cir.), *cert. denied,* 377 U.S. 980, 84 S.Ct. 1886, 12 L.Ed.2d 748 (1964) (evidence that defendant road contractor subsequently put out road signs admissible to show that portion of the road in question was under defendant's control); *Boeing Airplane Co. v. Brown,* 291 F.2d 310, 315–16 (9th Cir. 1961) (evidence of subsequent design modification admissible for purpose of showing that design changes and safeguards were feasible); *see generally,* 10 J. Moore, *Moore's Federal Practice* ¶ 407.04 (2d ed. 1982).

■ The district court admitted exhibits 7 and 8 for the purpose of showing what the specifications required. We cannot say that the district court abused its discretion in admitting these exhibits for that purpose. Moreover, we observe that the admission of these exhibits could not have unfairly prejudiced HDR. Exhibit 10 is a photograph of the same landing pan, and

 

was admitted into evidence without objection by HDR.[2]

 Exhibits 21 and 23 were letters written by HDR employees to the general contractor immediately after the accident. They were offered for the purpose of impeaching HDR's witnesses when these witnesses testified that the specifications only required the landing pans to be made of 10-gauge steel and did not require angle stiffeners or angle supports.

We conclude that the district court did not abuse its discretion in admitting these exhibits into evidence. We observe that HDR did not object to the introduction of these two exhibits,[3] that they were admitted for the specific purpose of impeaching witnesses, and that viewed in the context of the trial as a whole, cannot be considered unfairly prejudicial to HDR as evidence of subsequent repairs.

C. *Cross-Examination By the Trial Judge.*

 At the conclusion of the cross-examination of Lawrence Dean, an engineer employed by HDR, the district court asked Dean a series of questions. HDR asserts that in asking these questions, the court began to advocate the plaintiffs' position, thus depriving HDR of a fair trial.

Rule 614(b) of the Federal Rules of Evidence provides that the court may interrogate witnesses, whether called by itself or by a party. We note that the trial transcript in this case comprises 541 pages, and the questioning by the district judge comprises a total of two or three pages. After a careful review of the record, it cannot be concluded that the district court abandoned its role as a trial judge and assumed the role of an advocate, or that the trial judge's questions prejudiced the defendant's right

to a fair trial. Accordingly, we reject HDR's contention on this issue.

III. *Conclusion.*

We have studied HDR's other arguments on appeal, and after a careful review of the record and briefs in this case, find them to be without merit. Accordingly, we affirm the judgment of the district court.

---

2. At the beginning of the trial, HDR moved to exclude any evidence of subsequent remedial measures. The district court denied the motion. When exhibits 7 and 8 were later offered into evidence, HDR objected. The district court denied HDR's objection and granted HDR a standing objection to all evidence of subsequent remedial measures. However, when exhibit 10 was offered into evidence, HDR's attorney specifically stated that he had "no objection."

3. As we observed in footnote 2, HDR had a standing objection to the admission of any evidence of subsequent repairs. However, when exhibits 21 and 23 were offered into evidence, HDR's attorney stated that he had "no objection."