# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2089
_____

Phil Rosemann

*Plaintiff - Appellant*

v.

Martin Sigillito

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 15, 2015
Filed: May 4, 2015
_____

Before COLLOTON, BEAM, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

Phil Rosemann appeals the district court's adverse grant of summary judgment in this diversity action alleging legal malpractice against now-disbarred attorney Martin Sigillito. We agree with the district court[1] that in negligence cases like this

_____

[1]The Honorable Linda R. Reade, Chief District Court Judge for the Northern District of Iowa, sitting by designation.

one, Missouri law requires expert-witness testimony about the duty of care owed. Without providing an expert, Rosemann's claim is invalid. Thus, we affirm the judgment.[2]

## I. Background

The following facts are construed in the light most favorable to Rosemann, the non-moving party. Quinn v. St. Louis County, 653 F.3d 745, 750 (8th Cir. 2011). Rosemann hired Sigillito in 2002 to help him invest millions of dollars from the sale of Rosemann's shares in a family business, after Sigillito falsely informed Rosemann that he was an expert in international investments. Sigillito assured Rosemann that there would be no risk in investing the money in a foreign company and that Rosemann's interest would be protected. As part of this investment, Sigillito charged Rosemann $15,000 to incorporate Braithwaite Consulting Limited, a Belize company; Braithwaite purportedly would invest the money to reduce taxes on the investment. Rosemann was elected director and secretary of Braithwaite.

In January 2007, Rosemann received a $15.6 million buyout from the sales of shares of his family's company. Sigillito instructed Rosemann to loan $5 million of the buyout to *METAG Insaat Ticaret A.S.*, a Turkish contractor, referred to by both parties as "Metis." When Rosemann resisted, Sigillito told him "the loan was guaranteed by [North Atlantic Treaty Organization] contracts and that Sigillito would structure the deal to protect Rosemann and defer taxes." Sigillito assured Rosemann the NATO contracts could be seized if Metis did not repay the loan. Rosemann transferred the entire $15.6 million to Sigillito, who then wrote a $5 million check to Metis. For that service, Sigillito charged Rosemann $100,000. Sigillito took other portions of the $15.6 million for his own use and loaned $10.8 million to another party in England. Only approximately $2.75 million was repaid.

---

[2]We have jurisdiction over this appeal under 28 U.S.C. § 1291.

Two years later, in January 2009, Metis defaulted on the loan. In September 2009, Metis filed for bankruptcy protection in Turkey. Sigillito filed suit against Metis but assigned Braithwaite's interest to a St. Louis-based company owned by Sigillito. The district court in St. Louis transferred that lawsuit to New York because of venue problems. The suit eventually was dismissed. The loan remains in default, and according to Rosemann, the total owed in principal and interest is $7,464,041.

In April 2012, Sigillito was convicted of nine counts of wire fraud, four counts of mail fraud, six counts of money laundering, and one count of conspiracy to commit mail and wire fraud. He was sentenced to a total term of 480 months' imprisonment. See United States v. Sigillito, 759 F.3d 913, 922 (8th Cir. 2014).[3] After Sigillito's convictions, Rosemann brought this suit against Sigillito for legal malpractice regarding the handling of Rosemann's investments.[4]

Rosemann alleged in his complaint that the NATO contracts do not exist, and thus Rosemann was unable to recover the loaned $5 million. Rosemann says he "justifiably relied" on Sigillito's assurance that the contracts existed and that the investment was risk-free. He says he would not have entered into the loan had he

---

[3]Sigillito moved in this court to exclude any reference in Rosemann's brief to Sigillito's criminal trial. We may take judicial notice of judicial opinions, especially our own, and thus may reference the fact of Sigillito's conviction and his sentence in our consideration of this case. See Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005). Because we need not rely on the challenged section of Rosemann's brief to consider the merits of this appeal, we dismiss Sigillito's motion to strike as moot. See Stewart v. Prof'l Computer Ctrs., Inc., 148 F.3d 937, 940 n.3 (8th Cir. 1998).

[4]This suit, filed only by Rosemann and against only Sigillito, was preceded by a class-action suit by numerous plaintiffs, including Rosemann and Braithwaite, against numerous defendants, including Sigillito. The district court consolidated the cases for discovery purposes but not for trial purposes.

known that it was not guaranteed, and as a result of Sigillito's negligence in completing the loan, Rosemann suffered damages.

After discovery had concluded, Sigillito filed a motion in limine to exclude various sections of Rosemann's complaint, a trial brief, and a motion to strike witnesses. Relevant to this appeal, Sigillito moved to exclude any evidence of his alleged malpractice because, he asserted, Missouri law requires expert testimony to establish a claim of legal malpractice, and Rosemann had failed to name an expert. Because Rosemann had not named an expert to testify regarding Sigillito's alleged negligence in handling the $5 million loan to Metis, Sigillito concluded, any evidence about that subject should be excluded.

The district court informed the parties that it planned to convert Sigillito's three filings collectively into a motion for summary judgment and ordered Rosemann to respond with his own trial brief, addressing why Braithwaite was not a named plaintiff and why he had not named an expert witness. The court also ordered Rosemann to respond to the arguments in Sigillito's motion in limine. Rosemann did not object to the court's proposed course of action.

The court held a telephone status hearing on Rosemann's response and Sigillito's reply to the response and, one week later, issued a written order granting summary judgment for Sigillito. Although Rosemann sought to add a claim for negligent misrepresentation, the court rejected that new claim because Rosemann had attempted to add the claim in his amended jury instructions, which were struck by the court when Rosemann filed them past the deadline for proposed jury instructions. Additionally, nothing in Rosemann's complaint suggested he would "pursue separate claims for negligent misrepresentation and legal malpractice." Thus, the court concluded, the "only possible claim in this case is a professional negligence claim."

-4-

The district court reviewed the law on professional negligence in Missouri, which governs in this diversity suit. See Payne v. Grinnell Mut. Reinsurance Co., 716 F.3d 487, 490 (8th Cir. 2013). With few exceptions, the court noted, "an expert witness is generally necessary to tell the jury what the defendant should or should not have done under the particular circumstances." One relevant exception, the court added, is when the alleged negligence is "clear and palpable." But the court rejected application of that exception because in cases allowing it, a jury of lay persons could determine a party's negligence without additional information. The court compared that scenario with this case, in which an expert would be necessary to testify regarding "whether Rosemann would have recovered the amount due on the loan if not for Sigillito's alleged negligence."

In this case, the district court explained, Rosemann is not alleging a simple situation of negligence: Rosemann is not saying that Sigillito was negligent because he falsely told Rosemann the loan was guaranteed by the NATO contracts, which acted as collateral. Instead, the court concluded, Rosemann is alleging that Sigillito negligently advised him that the loan was a safe—i.e., not risky—investment because there were assets that could be seized in case of a default. That second situation, the court continued, raises a complex question, the answer to which requires a showing (1) whether Sigillito exercised the appropriate standard of care when investigating whether the collateral existed and when attempting to seize assets after Metis defaulted, and (2) that Rosemann would have recovered on the defaulted loan but for Sigillito's negligence. That claim was not submissible to a jury, the court ruled, because Rosemann failed to name an expert who would testify about the appropriate standard of care. Thus, the court granted Sigillito summary judgment.

**II. Discussion**

On appeal, Rosemann argues that his complaint focuses on Sigillito's false representation that the Metis loan was guaranteed by the NATO contracts. An expert,

Rosemann asserts, is not required for that claim, which can be proven with Rosemann's testimony that he relied on Sigillito's false advice. Thus, Rosemann concludes, summary judgment improperly was granted to Sigillito, and the case should have been presented to a jury.[5]

We review de novo the grant of summary judgment and may affirm the judgment on any basis supported by the record. See Curtis Lumber Co. v. La. Pac. Corp., 618 F.3d 762, 771 (8th Cir. 2010). Because this is a suit under diversity jurisdiction, we apply the law of the forum state—here, Missouri. See Payne, 716 F.3d at 490 .

Rosemann's complaint frames the action as one of legal malpractice based on negligence. To establish a claim of negligence under Missouri law, a plaintiff must show, among other things, the existence of a legal duty and a breach by the defendant of that duty. Freight House Lofts Condo Ass'n v. VSI Meter Servs., Inc., 402 S.W.3d 586, 597 (Mo. Ct. App. 2013). Missouri law also provides that in cases of professional negligence, "the specific duty is defined by the profession, itself"; thus,

> an expert witness is generally necessary to tell the jury what the defendant should or should not have done under the particular circumstances of the case and whether the doing of that act or the failure

---

[5]Rosemann also contests the district court's conversion of Sigillito's three filings (motion in limine, motion to strike, and trial brief) into a motion for summary judgment. The court notified the parties two months in advance that it planned to convert the filings into a motion for summary judgment and ordered Rosemann to demonstrate why summary judgment would be improper, even though the time to file a resistance to Sigillito's motion had long since passed. In his response, Rosemann did not object to the court's proposed action. Though the conversion was unusual, we see no error in the district court's decision. See Madewell v. Downs, 68 F.3d 1030, 1048 (8th Cir. 1995).

to do that act violated the standards of care of the profession (and, thus, constituted negligence).

Ostrander v. O'Banion, 152 S.W.3d 333, 338 (Mo. Ct. App. 2004). The negligent act, therefore, is the act or failure to act, the standards for which must be presented by an expert. Id. at 338–39; Parra v. Bldg. Erection Servs., 982 S.W.2d 278, 285 (Mo. Ct. App. 1998). Expert testimony also is required in actions alleging legal malpractice. See Roberts v. Sokol, 330 S.W.3d 576, 581 (Mo. Ct. App. 2011). "To establish that an attorney was negligent, a plaintiff must show that he failed to exercise that degree of skill and diligence ordinarily used under the same or similar circumstances by members of the legal profession." Id. at 580 (quotation omitted).

There are exceptions to this rule. Expert testimony is not required if the negligence in question is "clear and palpable to a jury of laymen." Zweifel v. Zenge & Smith, 778 S.W.2d 372, 374 (Mo. Ct. App. 1989); see Hart v. Steele, 416 S.W.2d 927, 932 (Mo. 1967) (explaining exception to expert-testimony requirement applies if "the want of skill or lack of care is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it"). A claim of legal malpractice would not require expert testimony if, for example, a lawyer failed to file a claim within the statute of limitations or allowed "some other time limit to pass." See Zweifel, 778 S.W.2d at 374.

In his complaint, Rosemann alleged that Sigillito negligently prepared the Promissory Note sent from Braithwaite—a Belize corporation—to Metis—a Turkish contractor. That is not the same argument Rosemann proffered to this Court during oral argument that Sigillito simply lied about the existence of the NATO contracts. To determine whether Sigillito negligently handled the Note, a jury would need to know what an attorney, "under the same or similar circumstances," would have done and why Sigillito's actions were unacceptable. Roberts, 330 S.W.3d at 580. That technical standard is similar to the standard allegedly not met by the attorneys in

Zweifel, who did not raise on appeal the trial court's failure to instruct the jury about excusable homicide. Both involve "somewhat arcane subjects to the ordinary juror," Zweifel, 778 S.W.2d at 374, subjects that go beyond the "common knowledge and experience" of most lay persons, Steele, 416 S.W.2d at 932. Because the alleged lack of care would not be "clear and palpable" to most lay persons in this case, this exception does not apply.

Rosemann alternatively argues that Sigillito's negligence would be within the "common knowledge" of the jury, thus invoking another potential exception to the requirement of expert testimony in cases alleging professional negligence. But the cases Rosemann cites in support of this argument are distinguishable because they discuss a professional who did not adhere to a contract or guide, rather than a particular standard of care. In Aetna Ins. Co. v. Hellmuth, Obata & Kassabaum, Inc., 392 F.2d 472 (8th Cir. 1968), the alleged negligence concerned a contractor who failed to supervise the filling of a sewer ditch, as was required under contract; to correct misaligned forms used to retain and support a poured concrete wall; and to recognize that a sewer pipe was improperly positioned and crooked. We held that a jury could understand these "commonplace factual situations," and thus no expert witness testimony was needed. Id. at 478. Similarly, in Jaeger v. Henningson, Durham & Richardson, Inc., 714 F.2d 773, 775 (8th Cir. 1983), an architect followed the directions in a shop drawing to craft a steel landing pan with 14-gauge steel and no angle stiffeners, even though earlier specifications required that the landing pad be fabricated from 10-gauge steel with angle supports. We concluded that the action against the architectural firm was one for negligent failure to supervise the shop drawings; because a jury of laypersons alone could determine whether failure to supervise an employee was negligent, the case did not require expert testimony on the appropriate standard of care. Id. at 776; see also Bartak v. Bell-Galyardt & Wells, Inc., 629 F.2d 523, 530 (8th Cir. 1980) (noting that action for negligence in supervision of architects "come[s] within the 'general knowledge' exception" to requirement of expert testimony).

-8-

Sigillito did not simply fail to follow instructions, a guide, or written specifications. Instead, by Rosemann's own words, Sigillito allegedly failed to exercise "the reasonable degree of knowledge and skill that is ordinarily possessed and exercised by attorneys in the preparation of a Promissory Note between two foreign corporations." Whatever knowledge or skill Sigillito allegedly should have had to prevent the collapse of the loan and loss to Braithwaite of $5 million is not obvious or common knowledge; rather, it is technical and based on the nature of the deal and the profession. Whether Sigillito improperly followed that standard requires the testimony of an expert in international law and/or international transactions.

We thus agree with the district court that Rosemann was required to name an expert who would testify regarding the proper standard of care in this case. Rosemann's failure to name an expert, under Missouri law, rendered his claim of professional negligence not submissible.[6]

Last, Rosemann asserts that his complaint contained a claim for negligent misrepresentation, which would not require expert testimony regarding the standard of care. Rosemann attempted to add this claim in his amended jury instructions, which he filed almost two weeks after the district court's imposed deadline for filing jury instructions. The court struck Rosemann's amended instructions and ordered the parties to consult with each other to develop proper joint instructions. Rosemann persisted in this claim, but the court concluded that any potential claim for negligent misrepresentation was properly treated as a claim for professional negligence.

Under Missouri law, when liability depends on an attorney's "negligent performance of professional services" to a client, the claim must be treated as one for

---

[6]Sigillito asserts Rosemann is not the proper plaintiff to bring this suit. Because we affirm the district court's judgment on a different basis, we, as the district court did, decline to address this argument.

attorney malpractice (i.e. professional negligence). Beare v. Yarbrough, 941 S.W.2d 552, 557 (Mo. Ct. App. 1997) (citing Donahue v. Shughart, Thomson & Kilroy, P.C., 900 S.W.2d 624, 629–30 (Mo. banc 1995)). In other words, a party may not clothe an attorney-malpractice claim as a claim of breach of contract or breach of a fiduciary duty. Donahue, 900 S.W.2d at 629–30; see also Klemme v. Best, 941 S.W.2d 493, 496 (Mo. banc 1997) ("If the alleged breach can be characterized as both a breach of the standard of care (legal malpractice based on negligence) and a breach of a fiduciary obligation (constructive fraud), then the sole claim is legal malpractice.").

We agree with the district court's conclusion. The basis for Rosemann's claims is that Sigillito mishandled the Promissory Note, failed to protect Rosemann from risk, and otherwise committed legal malpractice. Rosemann labeled the headings in his complaint "Pre-Loan Negligence" and "Post-Default Negligence"; nowhere is "misrepresentation" discussed. Rosemann does allege that "Sigillito violated his fiduciary obligation to Rosemann, with incompetent or negligent behavior." But this allegation of a breach of a fiduciary duty is based only on Sigillito's alleged "negligent behavior," i.e. his malpractice. So although Rosemann characterizes the alleged breach "as both a breach of the standard of care . . . and a breach of a fiduciary obligation," the only claim he can pursue, under Missouri law, is legal malpractice. Klemme, 941 S.W.2d at 496.

### III. Conclusion

For the reasons discussed above, we affirm the district court's grant of summary judgment in favor of Sigillito.

_____