Donald J. THIEL, et al., Appellants,

v.

Harold L. MILLER (Deceased),
et al., Respondents.

No. WD 63471.

Missouri Court of Appeals,
Western District.

May 10, 2005.

Rehearing Denied June 28, 2005.

Donald G. Stouffer, Marshall, MO, for appellants.

Errol D. Taylor, St. Joseph, MO, for respondents.

Before EDWIN H. SMITH, C.J., and ELLIS and HOWARD, JJ.

EDWIN H. SMITH, Chief Judge.

Diane Adell Burtrum, Robert Clay Killion, Nina Claire Tanner, Barbara Thiel, Michael M. Reece, Phillip Reece, and Donald J. Thiel appeal from the judgment of the Circuit Court of Daviess County for Day Miller (DM), individually, and as the defendant *ad litem* for Harold L. Miller (HM), deceased,[1] on the appellants' claim against DM and HM for legal malpractice. The appellants, other than Donald J. Thiel (Thiel), are legatees under the wills of Donald M. (Donald) and Clara M. (Clara) Reece. Donald died on August 26, 1992, while Clara died on December 21, 1997. Thiel is the personal representative of Clara's estate. In their petition, the appellants alleged that HM was negligent with respect to legal services he provided the Reeces in 1985 and 1992. They further alleged that they were damaged as a result of his negligence in that it caused Clara's estate to have to pay federal estate taxes and probate expenses totaling $205,486. The appellants' petition also named DM as a defendant, alleging that HM was acting as DM's agent or partner in rendering legal services to the Reeces. The case was transferred for trial from Dekalb County to Daviess County on a change of venue.

The appellants raise two points on appeal. In Point I, they claim that the trial court erred in concluding that HM was not negligent in providing legal services to the Reeces, as alleged in their petition, because its finding in support thereof, that he exercised that degree of skill and diligence ordinarily exercised by an attorney under the same or similar circumstances, was against the weight of the evidence. In Point II, they claim that the trial court erred in concluding that DM was not liable for HM's negligence in providing legal services to the Reeces because the court's finding, that HM, in providing legal services to the Reeces, was not acting as DM's agent, was against the weight of the evidence.

We affirm.

## Facts

HM, a licensed attorney who practiced law in Maysville, Missouri, before his death in 1993, was a longtime friend of Donald. In October of 1982, HM drafted wills for the Reeces, both of which provided that, upon the death of the survivor, and after providing for the care of Donald's mother and making certain charitable distributions, the remainder of the property was to be divided among the appellants, other than Thiel, who are Donald's nephews and Clara's sisters. The Reeces had no children.

On May 29, 1985, Clara executed an "EXCLUSIVE AND IRREVOCABLE POWER OF ATTORNEY" prepared by HM, which designated Donald and her brother-in-law, Thiel, as her joint attorneys-in-fact, to act jointly or separately in performing the powers enumerated therein. The POA prepared for Clara was not a durable POA, despite the adoption several years earlier of the Missouri Durable Power of Attorney Act, §§ 486.550–486.595.[2]

In the years that followed, both Clara and Donald experienced worsening health.

---

1. Harold L. Miller died on April 21, 1993. He is no relation to Day Miller.

2. All statutory references are to RSMo 2000, unless otherwise indicated.

Clara, who was blind in one eye as the result of a childhood accident, developed glaucoma in the other eye and gradually lost her sight, a condition that caused her to move into a nursing home in Maysville in 1986. By late 1989 or early 1990, Clara had developed some degree of dementia such that she could no longer carry on conversations with her friends and relatives. On September 10, 1993, Clara was declared totally disabled by the Circuit Court of Saline County, which appointed Thiel and his wife Barbara as her co-conservators.

In late June or early July of 1992, Donald, who had a history of heart problems and diabetes, was admitted to a hospital in St. Joseph, Missouri. While hospitalized, Donald asked HM to draft a trust. HM prepared a declaration of trust which designated Donald and Clara as the settlors and Donald and his friend Hershel Shepherd as the trustees of the "Don Reece and Clara Reece Trust." On July 2, 1992, Donald executed the declaration of trust, individually, and on behalf of Clara as her attorney-in-fact, under her 1985 POA. In an addendum, prepared by HM and signed by Donald for himself individually and for Clara under the POA, all of the Reeces' property, both real and personal, was transferred to the trust.

Donald died on August 26, 1992, approximately two months after the execution of the trust. Subsequently, prompted by a concern over the validity of the trust, Shepherd, as personal representative of Donald's estate, filed a petition to determine title to the assets in the trust in the Probate Division of the Circuit Court of Dekalb County. In a judgment entered September 13, 1994, the probate division declared that the Reeces' 1992 trust was void:

By virtue of the fact that ... Clara Reece was physically and mentally incapacitated, on or about July 2, 1992, and remained so thereafter and to this time, and for the further reason that the ... Exclusive and Irrevocable Power of Attorney [drafted by HM for her in May of 1985] was not "durable," the actions of Donald M. Reece, signing and acknowledging the Trust Declaration, and its Addendum, were of no legal force and effect, and accordingly were null and void such that no "Trust" was thereby created.

Clara passed away on December 21, 1997. On December 9, 1999, the appellants filed a two-count petition for damages for legal malpractice in the Circuit Court of Dekalb County. The petition named as defendants both HM and DM, who, before HM's death on April 21, 1993, practiced law in the same office in Maysville, Missouri. Count I alleged that HM was negligent in failing to draft a durable POA that would have given Donald, her attorney-in-fact, authority to make dispositions of the couple's property regardless of Clara's incapacity or disability, and drafting an invalid declaration of trust, which failed to accomplish the purpose of avoiding estate taxes and the expense and delay of probate. Count II alleged that HM was negligent for failing to pursue an alternative means of avoiding estate taxes once he knew, or should have known, that the 1992 trust was invalid, by opening a conservatorship in 1992 for Clara, and then taking advantage of the provisions of § 475.094, which allows the probate court to take certain steps to keep a disabled protectee's estate from being "substantially depleted" by federal estate taxes. The petition sought to hold DM liable for HM's negligence on the ground that HM, when providing legal services to the Reeces, was acting as his partner or agent of DM.

On December 9, 1999, the appellants filed a motion to appoint DM as defendant

*ad litem* for HM, pursuant to § 537.021, which was sustained on December 27, 1999. On January 3, 2000, the appellants moved for a change of venue pursuant to Rule 51.03.[3] On February 14, 2000, the motion was sustained, and the case was transferred to the Circuit Court of Daviess County.

The case was tried to the court on November 6–7, 2002. Robert Ravenhill, a former circuit judge, appeared as an expert witness for the appellants, and testified that HM's failure to draft a durable POA for Clara in 1985, given her deteriorating health and the possibility that she would subsequently become incapacitated, constituted a failure to exercise the degree of skill and diligence ordinarily used by an attorney under the same or similar circumstances. Ravenhill also testified that, in July 1992, HM attempted to draft an A/B trust, which was designed to avoid estate tax liability upon the death of the surviving spouse, while at the same time providing support for the remainder of that spouse's life, but the declaration of trust failed to include necessary provisions for the disposition of the funds in the "B" trust, so the trust failed to accomplish the goal of avoiding estate tax liability. Ravenhill further testified that HM's failure to properly draft the A/B trust constituted a failure to exercise the degree of skill and diligence ordinarily used by an attorney under the same or similar circumstances.

When asked, on direct examination, what an attorney "ought to do" when, as in the Reeces' situation, there is no durable POA or valid trust to effect estate tax savings, Ravenhill replied that "[o]bviously, you'd have to go to the probate court in the jurisdiction where she resides and establish a conservatorship." Ravenhill then stated that, if an attorney went this route, "all you could do is make gifts ... if you knew who to make them to and the probate court would allow same." Subsequently, Ravenhill testified: "In 1992, when Don Reece was alive, if there had been a conservatorship established for Clara Reece, that the conservator of the estate and Don Reece could have gone to the probate court and done enough to divide the estate and avoid probate tax—if they had both gone. I see no barrier to that."

Ravenhill also testified that the amount of estate taxes which could have been avoided had HM not been negligent in his legal services was $166,608. Ravenhill derived this figure from the Internal Revenue Service Form 706 filed for Clara, which also showed a total estate of $1,110,547. The appellants also claimed that, as a result of HM's negligence, the estate incurred both attorney's and personal representative's fees as probate costs, so that the total damages claimed by the appellants was $205,486.

At trial, the appellants also presented the deposition testimony of DM, who stated that he and HM were never partners. According to DM's deposition testimony, from 1975 until August of 1989 he "was an independent contractor paid a straight salary by Harold." After DM bought "the law business" from HM in August of 1989, any fees which HM collected for the practice of law were paid to DM. DM testified that he had nothing to do with the preparation of the 1992 declaration of trust or the 1985 POA that were involved in this case.

On September 29, 2003, the trial court entered judgment in favor of the defen-

---

**3.** All rule references are to the Missouri Rules of Civil Procedure, 2004, unless otherwise indicated.

dants. The trial court found that HM's failure to (1) draft a durable POA in 1985, and (2) draft a valid trust in 1992, were not the legal cause of the plaintiffs' alleged damages, in that the trust was invalid in any event, in that Clara's POA did not explicitly authorize her attorney-in-fact to create a trust, as required by § 404.710.6. The trial court also rejected the appellants' claim that HM was negligent for failing to open a conservatorship estate for Clara so that the assets that she owned with Donald could be divided to avoid paying estate taxes, stating:

There is no authority available to a conservator to change a protectee's estate plan for the purpose of effectuating savings of federal estate taxes except as provided by § 475.094 RSMo. Then only in a very limited manner through the vehicle of gifting. This section is not authority to divide a protectee's property with a spouse in order to take advantage of the unified credit thus avoiding federal estate taxes. Section 475.094 RSMo. would not permit a conservator to divide Clara Reece's estate for federal estate tax purposes and the conservator is without authority to sever and divide her property otherwise pursuant to § 475.332 RSMo. Plaintiff's claim that Harold Miller was negligent in failing to create a conservatorship in order to save federal estate taxes in the estate of Clara M. Reece is without merit and fails.

In addition, the trial court found that DM was not HM's principal or partner at the time that HM provided legal services to the Reeces.

This appeal followed.

## Standard of Review

The standard of review in this court-tried legal malpractice case is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.

banc 1976). *McRentals, Inc. v. Barber*, 62 S.W.3d 684, 696 (Mo.App.2001). We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* This court will set aside a judgment as against the weight of the evidence only if it firmly believes that the judgment is wrong. *Doynov v. Doynov*, 149 S.W.3d 917, 922 (Mo.App.2004). In our review of a court-tried case, we view the evidence, along with all reasonable inferences, in the light most favorable to the trial court's judgment, and disregard all contrary evidence and inferences. *McRentals*, 62 S.W.3d at 696.

## I.

In Point I, the appellants claim that the trial court erred in concluding that HM was not negligent in providing legal services to the Reeces, as alleged in their petition, because its finding in support thereof, that he exercised that degree of skill and diligence ordinarily exercised by an attorney under the same or similar circumstances, was against the weight of the evidence. Specifically, they claim that the trial court's finding was wrong in that the evidence favorable to the trial court's judgment and all reasonable inferences from that evidence leads to only one conclusion—that HM was negligent in one or more of the following respects: (1) in failing to draft a durable POA for Clara in 1985, in that this failure prevented Donald from acting on behalf of Clara in creating the Reeces' revocable *inter vivos* trust in 1992 that would have allowed Clara's estate to avoid federal estate taxes and probate expenses; (2) in failing to include in the trust documents all of the necessary provisions of an A/B trust, in that this failure caused the Reeces' trust to fail with respect to avoiding the payment of federal

estate taxes and probate expenses; and, (3) in failing to recognize that the Reeces' trust was either invalid or was insufficient, in the foregoing respects, and thereafter, failing to open a conservatorship for Clara that would, pursuant to § 475.094, have protected her estate from being "substantially depleted" by the payment of federal estate taxes.

To succeed on a legal malpractice claim for negligence, the plaintiff must show: (1) an attorney-client relationship; (2) negligence; (3) damages; and, (4) a causal connection between the attorney's negligence and the plaintiff's damages. *Klemme v. Best,* 941 S.W.2d 493, 495 (Mo. banc 1997). To establish that an attorney was negligent, a plaintiff must show that he failed to exercise that degree of skill and diligence ordinarily used under the same or similar circumstances by members of the legal profession. *London v. Weitzman,* 884 S.W.2d 674, 677 (Mo.App.1994). In order to prove damages and causation, the plaintiff must show that, "but for" the negligence of the attorney, the result of the underlying action or proceeding would have been different. *Mogley v. Fleming,* 11 S.W.3d 740, 747 (Mo.App.1999); *Steward v. Goetz,* 945 S.W.2d 520, 532 (Mo.App. 1997); *Baldridge v. Lacks,* 883 S.W.2d 947, 954 (Mo.App.1994). "The measure of damage would be the amount a client would have received 'but for' the attorney's negligence." *Steward,* 945 S.W.2d at 532.

The appellants alleged in their petition, in two counts, that HM was negligent in his estate planning for the Reeces in that he failed to properly establish a trust for them or open a conservatorship for Clara, either of which would have avoided federal estate taxes and, in the case of the former, would have also avoided probate expenses for the decedent's estate of Clara. In Count I, they alleged that HM was negligent with respect to creating the Reeces' trust. In Count II, they alleged, in the alternative, that he was negligent for failing to recognize the infirmities in the creation of the trust and failing to open, in the alternative, a conservatorship to protect Clara's estate, pursuant to § 475.094, from substantial depletion for the payment of federal estate taxes.

## A. Count I—The Trust

In Count I, the appellants alleged that HM was negligent in establishing the Reeces' trust in two respects: (1) in failing to draft a durable POA for Clara in 1985; and, (2) in failing to include in the trust declaration of 1992 all the necessary provisions of an A/B trust. They alleged that "but for" these failures, Clara's estate would have paid less in federal estate taxes and probate expenses, in the amount of $205,486, resulting in a larger estate for the beneficiaries of Clara's estate. In other words, the outcome of the underlying probate proceeding, with respect to the payment of federal estate taxes and probate expenses by Clara's estate, would have been different, but for HM's alleged negligence.

In alleging in Count I that HM was negligent for failing to draft a durable POA for Clara in 1985, the appellants contend that this act resulted in Donald's not being able to act on Clara's behalf in executing the Reeces' trust in 1992 such that the trust was a nullity, *ab initio,* resulting in federal estate taxes and probate expenses. It is undisputed that had a valid trust been established in 1992, federal estate taxes and probate expenses could have been avoided by Clara's estate. However, as we discuss, *infra,* the mere fact that HM failed to draft a durable POA, as opposed to a non-durable POA, did not cause the trust to be void.

The record reflects that Donald approached HM about setting up a trust in

the early summer of 1992. HM drafted the declaration of trust, which was executed on July 2, 1992. Donald executed the trust individually and on behalf of Clara as her attorney-in-fact, under the POA drafted in 1985. Although Clara had not been adjudicated as being disabled, as defined in § 475.010(4)(a), such that she could not manage her financial resources, the record indicates that there was reason to believe at the time that she was not competent to execute the declaration of trust on her own behalf.

The record reflects that in 1994, in a proceeding before the probate division of the Circuit Court of Dekalb County to determine title to the purported assets of the Reeces' trust, the trust was declared void for the reason that Donald could not act under the 1985 POA to execute the trust declaration for Clara as her attorney-in-fact. *See State ex rel. Ryan v. Ryan,* 124 S.W.3d 512, 516 (Mo.App.2004) (holding that actions which exceed statutory authority are void *ab initio* and are a legal nullity). The probate court found that Donald did not have the authority to execute the declaration of trust for Clara as her attorney-in-fact under the 1985 POA because it was not a durable POA that survived her incapacitation, as found by the court. *See* § 486.560, RSMo.1986,[4] (providing that "all acts done by an attorney in fact pursuant to a durable power of attorney prior to a judicial determination of disability or incapacity of the principal shall have the same effect ... as if the principal were competent and not disabled."). In that regard, the appellants alleged in their petition that HM should have drafted a durable POA in 1985, which would have provided for the management of Clara's affairs in the event of her future incapacity or disability, and that if he had, Donald would have been empowered to

execute the trust for Clara in 1992 such that it would have been valid and federal estate taxes and probate expenses would have been avoided. In other words, they alleged that "but for" HM's failure to draft a durable POA for Clara in 1985, the trust would have not failed and the outcome of the underlying probate proceeding, with respect to the payment of federal estate taxes and probate expenses by Clara's estate, would have been different.

Even assuming, *arguendo,* that HM's failure to draft a durable POA for Clara in 1985 fell below the required standard of care, the appellants' claim would still fail in that they did not satisfy the "but for" test, or in other words, they did not show that HM's failure to draft a durable POA, versus a non-durable POA, resulted in the damages claimed—the payment of federal estate taxes and probate expenses.

In 1989, the Durable Power of Attorney Act, §§ 486.550–.595, RSMo. Supp.1983, was repealed and enacted in lieu thereof was the Durable Power of Attorney Law of Missouri, §§ 404.700–.735. Section 404.710.6 of the durable power of attorney law provides, in pertinent part:

6. Any power of attorney, *whether durable or not durable,* and whether or not it grants general powers for all subjects and purposes or with respect to express subjects or purposes, shall be construed to grant power or authority to an attorney in fact to carry out any of the actions described in this subsection if the actions are expressly enumerated and authorized in the power of attorney. Any power of attorney may grant power of authority to an attorney in fact to carry out any of the following actions if the actions are expressly authorized in the power of attorney:

---

4. This section was repealed in 1989.

(1) To execute, amend or revoke any trust agreement;

(2) To fund with the principal's assets any trust not created by the principal. (Emphasis added.) Thus, under this statute, regardless of whether a POA is durable or non-durable, the attorney-in-fact is not authorized to act for the principal in establishing a trust with respect to the principal's funds, unless a specific provision to that effect appears in the POA.

Pursuant to § 404.735.2, § 404.710.6 is made applicable to POAs executed prior to August 28, 1989. Hence, regardless of what the law was in 1985, when Clara's POA was drafted and executed, as to the powers of an attorney-in-fact under a durable POA, based on the controlling law in 1992, when Donald executed the trust declaration for Clara, as her attorney-in-fact, the POA under which he acted, even if durable, had to include an express provision authorizing him to so act. Thus, even if HM had drafted a durable POA for Clara in 1985, as opposed to a non-durable POA, the Reeces' trust would have still been declared invalid by the probate court in 1994, unless the POA included the trust authorization provision required by § 404.710.6. Hence, even if the appellants could establish that HM's failure to draft a durable POA was negligent in some respect, they could not establish that "but for" this failure, the Reeces' trust would have been found valid by the probate court in 1994, *and* Clara's estate would have avoided federal estate taxes and probate expenses. Thus, the trial court was correct in denying the appellants' legal malpractice claim based on HM's drafting of a non-durable, rather than a durable POA for Clara in 1985, as alleged by the appellants.

■ Even if the appellants had alleged in their petition that HM was negligent for failing to amend Clara's POA, prior to her incapacitation and the execution of the declaration of trust in 1992, to include a trust authorization provision, as required by § 404.710.6, their legal malpractice claim, based on a deficient POA, would still fail. Ravenhill, the appellants' expert witness, testified that in his entire professional career, he could not recall ever seeing such a provision in a POA. Likewise, DM testified that he would discourage a client from seeking to include such a provision in a POA because such power was too broad and subject to abuse. Thus, even if the appellants had claimed that HM was negligent for failing to include a trust authorization provision in the POA, the evidence was sufficient for the trial court to find that HM was not negligent in failing to include such a provision. While the trial court found for the respondents on an alternate basis, we are to affirm on any basis supported by the record. *Ballard v. Ballard*, 77 S.W.3d 112, 118 (Mo.App. 2002).

As noted, *supra*, in addition to alleging in Count I that HM was negligent for failing to draft a durable POA for Clara, the appellants also alleged that he was negligent for not including in the trust documents all the necessary provisions of an A/B trust. However, in light of the fact that the Reeces' trust of 1992 was invalidly created, due to Donald's lack of authority to act as to Clara, and was void, *ab initio*, the inclusion of such a provision would not have changed the result they decry, the invalidation of the trust and the failure to avoid federal estate taxes and probate expenses. Hence, the appellants could not and did not make a legal malpractice claim on that basis either.

### B. Count II—The Conservatorship

In Count II of their petition, the appellants alleged, alternatively, that HM was negligent in failing to establish a conserva-

torship for Clara in 1992, to allow the court, pursuant to § 475.094, to release her interests in property that she held jointly with Donald, once he knew or should have known that the trust had failed, as a means to avoid federal estate taxes. In that regard, the appellants contend that in preparing a durable POA for Donald in June of 1992, HM should have realized his mistakes in preparing Clara's non-durable POA in 1985 and its resulting invalidation of the Reeces' trust. And, from that, they argue that since Donald did not die until some eight weeks later, there was "ample time in which to apply for Letters of Conservatorship for Clara and then proceed to divide the property under the authority of RSMo. § 475.094." They claim that the trial court's denial of their legal malpractice claim in this count was against the weight of the evidence.

■ To make a legal malpractice claim on the basis alleged in Count II of their petition, the appellants had to show, *inter alia*, that HM, in failing to recognize in June of 1992 that the Reeces' trust had failed due to the limitations of Clara's POA and failing thereafter to pursue a conservatorship for Clara so as to invoke the provision of § 475.094, allowing the court "to convey or release [her] contingent and expectant interests in property, including marital property rights and any right of survivorship incident to joint tenancy or tenancy by the entirety," thereby avoiding the federal estate taxes sought to be avoided by the creation of the trust, failed to exercise that degree of skill and diligence ordinarily used under the same or similar circumstances by members of the legal profession. The trial court found that they had failed in that endeavor, and we agree.

■ Except in "clear and palpable" cases, expert testimony is required to establish a claim of legal malpractice. *Bal-*

*dridge*, 883 S.W.2d at 954. From the record, we see nothing clear and palpable in determining whether HM, exercising the required standard of care, should have pursued the conservatorship route in 1992 in order to protect Clara's estate from federal estate taxes. As we discuss, *infra*, there were numerous factual and legal issues left unresolved by the record from which to judge HM's performance as to whether he should have counseled Donald to pursue a conservatorship for Clara and seek to invoke the federal-estate-tax-avoidance provisions of § 475.094.

■ Logically, HM could not be found negligent with respect to the failures charged in Count II unless the evidence demonstrates that the conservatorship route was a readily discernable and viable alternative to the creation of the Reeces' trust to accomplish the apparent desired objective of avoiding federal estate taxes by Clara's estate. Common sense dictates that counsel's failure to engage in a futile act would not fall below the required standard of care. *See Cline v. Teasdale*, 142 S.W.3d 215, 220 (Mo.App.2004) (holding that, logically, an attorney is not negligent in failing to engage in a futile act). In that regard, it is not at all clear from the record that, even if HM had pursued the conservatorship route for Clara, this would have been a successful alternative to the trust route for avoiding federal estate taxes by virtue of the application of § 475.094.

Assuming, *arguendo*, that the record would support the fact that HM knew or should have known that the Reeces' trust was infirm, from the record it is not at all clear that the § 475.094 alternative was viable and should have been pursued by HM acting competently under the circumstances. Moreover, it is not at all clear that "but for" HM's failure to pursue this alternative, Clara's estate would have avoided the federal estate taxes com-

plained of by the appellants in their legal malpractice claim.

Section 475.094 reads:

> If the court determines and enters a finding that a *permanently totally mentally disabled* protectee's estate would be substantially depleted upon his death by the payment of federal estate taxes, the court is hereby empowered: to exercise or release powers of appointment, to change the beneficiaries and elect options under insurance and annuity policies, to make gifts to the natural objects of the protectee's bounty, to convey or release his contingent and expectant interests in property including marital property rights and any right of survivorship incident to joint tenancy or tenancy by the entirety, to surrender insurance or annuity policies for their cash values, to exercise his right to an elective share in the estate of his deceased spouse, and to renounce any interest by testate or intestate succession or by inter vivos transfer, if such act or acts will not deplete the protectee's estate so as to impair the ability to provide for the protectee's foreseeable lifetime needs, and if such act will cause financial benefits to inure solely to the natural objects of the protectee's bounty. Such act shall be undertaken by the court only to the extent that it will result in a substantial saving of federal estate tax for the estate of the disabled protectee upon his death.

(Emphasis added.) Thus, for § 475.094 to apply in support of the appellants' legal malpractice claim, as alleged in Count II, they had to show, *inter alia*, that Clara, between June of 1992 and the time of Donald's death some six weeks later, the critical time alleged by the appellants, would have been adjudicated as being "permanently totally mentally disabled."

Letters of conservatorship of the estate may be issued for any person adjudged to be "disabled." § 475.030.1. A "disabled person" is defined in § 475.010.4(a) as a person who is "[u]nable by reason of any *physical or mental* condition to receive and evaluate information or to communicate decisions to such an extent that the person lacks ability to manage his financial resources[.]" (Emphasis added.) And, "[m]anage financial resources" means the ability to take:

> those actions necessary to obtain, administer and dispose of real and personal property, intangible property, business property, benefits, income or any assets, or those actions necessary to prevent waste, loss or dissipation of property, or those actions necessary to provide for the care and support of such person or anyone legally dependent upon him by a person of ordinary skills and intelligence commensurate with his training and education[.]

§ 475.010(11). The person petitioning to be appointed a conservator of an estate has the burden of proving a disability by clear and convincing evidence. § 475.075.7; *Ryan v. Maddox*, 112 S.W.3d 476, 481 (Mo.App.2003). Section 475.075.1 requires that a hearing be conducted in determining whether to grant letters of conservatorship. *Estate of Ewing v. Bryan*, 883 S.W.2d 545, 547 (Mo.App.1994). The determination of whether to appoint a conservator is based on the respondent's condition at the time of the hearing. *In the Matter of Mitchell*, 914 S.W.2d 844, 847 (Mo.App.1996).

In this case, Clara was adjudged to be totally disabled on September 13, 1993, and accordingly, Barbara Thiel, who was Clara's sister, and Barbara's husband Donald, were appointed her co-conservators. Thus, there is evidence in the record that on September 13, 1993, Clara had been

found to be totally disabled. However, for § 475.094 to apply, in support of the appellants' malpractice claim, as alleged in Count II, the evidence would have had to demonstrate that a court would have found Clara to be "permanently totally mentally disabled" in mid–1992. One could only speculate that having been found totally disabled in late 1993 that Clara would have been found to be "permanently totally mentally disabled" in mid–1992, for purposes of § 475.094.

■■■ It is significant that § 475.094 requires that the protectee be found to be "permanently totally mentally disabled," rather than simply being found to be "totally disabled," in order for the court to divest the protectee of assets to avoid federal estate taxes. Section 475.010.4(a) provides that a person is considered disabled for purposes of a conservatorship, as provided in § 475.030.1, for either a physical or mental condition, and there is no requirement that the condition be permanent. Hence, a person could be totally disabled and have a conservator appointed, pursuant to § 475.030.1, for a physical condition that was not permanent, such that § 474.094 would not apply. In providing a greater showing for purposes of § 475.094 than is required for a conservatorship, the legislature obviously recognized that the court should not be allowed to resort to the drastic step of permanently divesting a protectee of his assets, unless he is and will always be mentally unable to make reasoned decisions concerning his property.

In addition to the doubt that exists with respect to Clara's adjudication as being "permanently totally mentally disabled" in mid–1992, doubt also exists, based on the record, as to the application of § 475.094, in any event, due to the various conditions precedent imposed by the statute in order for the court to divest the estate of assets, in the various ways enumerated, to avoid federal estate taxes. The court can only act for the protectee, under § 475.094, if the "protectee's estate would be substantially depleted upon his death by the payment of federal estate taxes." What constitutes "substantially depleted," for purposes of § 475.094, has never been determined by the courts. Thus, some question as to that issue would have existed for HM at the time the appellants alleged he should have acted in creating a conservatorship for Clara to avoid federal estate taxes, pursuant to § 475.094.

In addition to the requirement of substantial depletion, § 475.094 requires, before the court can act in accordance therewith, a determination that the divestiture of assets "will not deplete the protectee's estate so as to impair the ability to provide for the protectee's foreseeable lifetime needs, and ... will cause financial benefits to inure solely to the natural objects of the protectee's bounty." The record is devoid of substantial evidence of either of these conditions precedent to allow a determination as to whether the § 475.094 route was a viable alternative that should have been pursued by HM, acting within the appropriate standard of care, in order to avoid federal estate taxes for Clara's estate.

Given the lack of evidence in the record to find that the § 475.094 alternative was a clear and viable alternative for avoiding federal estate taxes, the appellants were compelled to produce expert testimony to demonstrate HM's negligence in failing to pursue this alternative, *Baldridge*, 883 S.W.2d at 954 (stating that expert testimony is required in legal malpractice claims except in a "clear and palpable" case), which they failed to do. The appellants' expert, Ravenhill, never concluded that, in not pursuing a conservatorship, HM failed to exercise that degree of skill and diligence ordinarily used under the same or

similar circumstances. Moreover, from the record, it appears that the facts and the law would have prevented him from so testifying to any degree of professional certainty. Hence, the record simply does not support the appellants' claim in this point that the trial court's determination, that HM was not negligent in failing to pursue a conservatorship for Clara in order to avoid federal estate taxes, is against the weight of the evidence.

Point denied.

## II.

In Point II, the appellants claim that the trial court erred in concluding that DM was not liable for HM's negligence in providing legal services to the Reeces because the court's finding, that HM, in providing legal services to the Reeces, was not acting as DM's agent, was against the weight of the evidence. Specifically, they claim that the court's finding was against the weight of the evidence in that it was conceded at trial that DM owned the offices shared by HM; the two shared a letterhead, libraries, office equipment, staff, and services; and DM received all the compensation paid by the Reeces for HM's legal services. Given our resolution of Point I, *supra*, this point is moot. A claim of error is moot if resolution of the claim has no practical effect on the outcome of the appeal. *Cline*, 142 S.W.3d at 224.

Point denied.

### Conclusion

The judgment of the Circuit Court of Daviess County, finding for the respondents on the appellants' legal malpractice claim, is affirmed.

ELLIS and HOWARD, JJ., concur.