**Becky ROBERTS and Ronald Roberts, Appellants,**

**v.**

**Ronald SOKOL, Aaron Sachs, and Aaron Wm. Sachs & Associates, P.C., Respondents.**

**No. SD 30263.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 6, 2011.

Motion for Rehearing or Transfer
Denied Jan. 31, 2011.

Application for Transfer
Denied March 1, 2011.

and it is probable the juvenile division's findings would have been the same.

Fred. J. Spigarelli, The Spigarelli Law Firm, Pittsburg, KS, for appellants.

Ron Mitchell, Phillip D. Greathouse, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for respondents.

ROBERT S. BARNEY, Presiding Judge.

Becky Roberts ("Mrs. Roberts") and Ronald Roberts ("Mr. Roberts") (collectively "Plaintiffs") appeal the trial court's grant of summary judgment in favor of Ronald Sokol ("Attorney Sokol"), Aaron Sachs ("Attorney Sachs"), and Aaron Wm. Sachs & Associates, P.C. ("the law firm") (collectively "Defendants") on Plaintiffs' "Petition in Damages" ("Petition") which was based on claims of legal malpractice against Defendants. Plaintiffs posit three points of trial court error. We affirm in part, reverse in part, and remand for further proceedings.

The record reveals that Mrs. Roberts was a passenger in a vehicle operated by Kelley Nabors ("Ms. Nabors") when that vehicle was involved in a collision with a vehicle operated by Denise Patterson ("Ms. Patterson"), an employee of Shelter Mutual Insurance Company ("Shelter"), who was acting within the course and scope of her employment at the time of the accident. Mrs. Roberts suffered a number of injuries as a result of the accident and Plaintiffs employed Defendants' law firm to represent them in an action against Ms. Nabors, Ms. Patterson, and Shelter. The petition in the underlying case was filed on March 3, 2003, and an amended petition was filed on June 19, 2003.

During trial preparation, Mrs. Roberts' medical records were obtained and Attorney Sokol felt the medical records contained information "that [was] positive for [the] case and negative for [the] case." Defendants also had Mrs. Roberts evaluated by Dr. Michael Whetstone ("Dr.Whetstone"), a neuropsychologist, in preparation for Dr. Whetstone's trial testimony relating to her injuries and medical status.

A trial on the underlying matter was held on November 1, 2004. At trial, it appears that Ms. Nabors, Ms. Patterson and Shelter disputed liability as well as the nature and extent of Mrs. Roberts' injuries. As for the issue of liability, there was eyewitness testimony from two witnesses that it was Ms. Patterson who had the right-of-way at the time of the accident, and there was conflicting testimony between Mrs. Roberts' trial testimony and her prior deposition testimony on several issues. On the matter of Mrs. Roberts' injuries and the amount of her damages, there was no live testimony offered by Mrs. Roberts' treating physicians and, instead, Dr. Whetstone testified about her medical issues based on his evaluation and review of her medical records. Additionally, many of her medical bills offered at trial in support of the issue of damages were rejected by the trial court. No other expert testimony or lay witness testimony was offered on Plaintiffs' behalf by Defendants.

At the conclusion of all the evidence, the jury found Ms. Nabors was one hundred percent at fault for the accident;[1] awarded Mrs. Roberts $156,000.00 in damages; and ruled against Mr. Roberts on his loss of consortium claim. Defendants filed several post-trial motions on Plaintiffs' behalf; however, all of these motions were overruled. Following the denial of these mo-

tions but prior to the filing of an appeal by Plaintiffs, Farm Bureau (Ms. Nabors and her husband's automobile insurance carrier), offered to settle with Plaintiffs for $96,927.64, and this offer was accepted by Plaintiffs after consulting with independent counsel.

Plaintiffs subsequently filed the present Petition against Defendants on December 14, 2005, in which they asserted a claim in their first count for "Gross and Wanton Negligence" in handling Mrs. Roberts' case and in their second count, a claim for failure to properly pursue the "Consortium Claim" of Mr. Roberts. In particular, the petition asserted the following grounds for their claims of legal malpractice against Defendants, to-wit, that Attorney Sokol 1) failed to "prepare" Plaintiffs for their trial testimony; 2) failed to provide medical testimony that Mrs. Roberts' medical bills were for treatment that was necessary and reasonable and related to the accident at issue leading to their exclusion by the trial court; 3) failed "to present testimony from [Mrs.] Roberts' treating physicians with regard to her injuries, causation, medical treatment, and past and future medical bills;" 4) failed to "present testimony from any liability expert with regard to the speed of the vehicles, drivers' reaction time, point of impact, or the cause of the collision . . .;" 5) failed to present testimony from lay witnesses to support Plaintiffs' "character and claims;" 6) failed "to present a vocational rehabilitation expert [or] an economist to prove [Mrs. Roberts'] future economic losses;" 7) failed to present testimony or records from Mrs. Roberts' employer in order to "verify her loss of earnings" and her "quality" of work; 8) failed to "put on evidence of the loss of household services of [Mrs. Roberts];" and 9) "allowed incorrect jury instructions and

1. Ms. Nabors had an insurance policy with Farm Bureau Mutual Insurance Company ("Farm Bureau") which had policy limits of $100,000.00.

a verdict form to be used[,] failed to object to the use of these instructions and verdict form[,] and failed to make a motion for a new trial on these grounds."

On June 24, 2009, following the filing of Defendants' answer and the subsequent disposition of several pending motions, Defendants filed their motion for summary judgment. In it, Defendants asserted that uncontroverted facts established that Plaintiffs' claims involved issues of "trial strategy or good faith errors in judgment, which do not support a claim for attorney negligence under Missouri law," and that Plaintiffs could not establish that the alleged acts or omissions of Defendants were the proximate cause of any damages, because Plaintiffs had settled the underlying case, thereby depriving "[Defendants] of a final adjudication and vindication of their judgments and strategy."

In their motion for summary judgment, Defendants set out the following uncontroverted facts: 1) Attorney Sokol prepared Mrs. Roberts "for trial shortly before it began and had lunch with her on the first day of trial to talk about her testimony" and that Mrs. Roberts testified in her deposition that "although she doesn't remember being prepared for trial, it may have happened;" 2) prior to trial, Attorney Sokol believed Mrs. Roberts' medical records were subject to an agreement with opposing counsel "to allow the bills into evidence at trial without the need for calling records custodians," that once opposing counsel objected to the records Attorney Sokol argued that the "reasonableness of medical bills is presumed and may be proven by [the] lay testimony" of Mrs. Roberts', that Attorney Sokol also argued that "under the Sudden Onset Doctrine, which provided causal connection between the negligent act, injury, and necessary medical treatment" the medical records could be admitted into evidence, and that this argument

was, nevertheless, rejected by the trial court; 3) that Dr. Whetstone properly evaluated Mrs. Roberts and her medical records prior to his trial testimony, that her medical records revealed issues that were both positive and negative for her case, that Attorney Sokol chose not to call her treating physicians due to "concerns about opening the door to cross-examination about [her] history of drug, alcohol, sexual, and physical abuse and because the doctors who expressed opinions regarding her constellation of symptoms and degree of disability stated that she was less injured than she came across," and that Mrs. Roberts "admits she does not know if calling [her treating physicians] would have made a difference in the jury verdict;" 4) that Defendants "considered" engaging an engineer or accident reconstruction expert and that the idea was "rejected" for the following reasons: the high cost of such an expert, "the fact that the other car could not have started at 0 and hit the vehicle in which [Mrs. Roberts] was in so hard," testimony from "two independent witnesses ... that [Ms. Patterson's] vehicle had the right of way or green light," and Mrs. Roberts' inconsistent testimony "on the issue of the color of the light for [Ms. Nabors'] vehicle, stating that it was a green arrow and a green light and testifying she didn't know what color the light was;" 5) that Attorney Sokol "interviewed potential lay witnesses before trial," but decided not to call any of them to testify based on his reasoning that "[t]here is a danger to putting on lay or character witnesses at trial, and if [Attorney] Sokol thought the case was going well (as he did ...), he probably would not choose to put them on;" 6) that Defendants introduced information relating to Mrs. Roberts' W–2 forms and "the Missouri mortality tables in order to extrapolate her economic loss" during her testimony; 7) that Defendants considered hiring an economist to aid in

putting on evidence of loss of household services but ultimately rejected the idea because "the cost of presenting such evidence ... outweighed the benefit" and that with regard to presenting "loss of household services evidence," Attorney Sokol had explained to Plaintiffs "that there were lots of ways to try cases, and about the expenses of the case and the effect on the net to them if they were only able to get a judgment against ..." one defendant; and 8) that Plaintiffs "never objected to [Defendants'] choices as to how to present the case," and after the jury returned its verdict, Mrs. Roberts expressed her surprise that "no fault was found [against Ms.] Patterson" but she "d[id not] know of anything that could have changed the jury's mind about fault."

In their "Response to Defendants' Motion for Summary Judgment," Plaintiffs controverted each and every factual averment set out by Defendants, chiefly by way of the depositions of Mrs. Roberts and Attorney Sokol showing there remained genuine issues for trial. *See* Rule 74.04(c)(2).[2]

A hearing was held on Defendants' motion for summary judgment on November 24, 2009. At the conclusion of the hearing, the trial court took the matter under advisement. On December 8, 2009, the trial court entered its Judgment in which it found that having reviewed all the documents presented to it "there is no genuine issue of material fact on any material issue and Defendants are entitled to judgment as a matter of law as to all claims asserted in the Petition." This appeal followed.

 Preliminarily, we observe that it is settled law that:

[t]o establish a claim for legal malpractice, a plaintiff must prove that (1) an attorney-client relationship existed;[3] (2) the attorney acted negligently or in breach of contract; (3) such acts were the proximate cause of the client's damages; and (4) but for the attorney's conduct the client would have been successful in the prosecution of the underlying claim.

*Novich v. Husch & Eppenberger*, 24 S.W.3d 734, 736 (Mo.App.2000); *see Patterson v. Warten, Fisher, Lee & Brown, L.L.C.*, 260 S.W.3d 417, 419 (Mo.App.2008). "To establish that an attorney was negligent, a plaintiff must show that he failed to exercise that degree of skill and diligence ordinarily used under the same or similar circumstances by members of the legal profession." *Thiel v. Miller*, 164 S.W.3d 76, 82 (Mo.App.2005); *see Steward v. Goetz*, 945 S.W.2d 520, 531 (Mo.App. 1997). "To prove damages and causation, the plaintiff must prove that, but for the attorney's negligence, the result of the underlying proceeding would have been different.'" *Collins v. Missouri Bar Plan*, 157 S.W.3d 726, 732 (Mo.App.2005) (quoting *Rodgers v. Czamanske*, 862 S.W.2d 453, 458 (Mo.App.1993)); *see London v. Weitzman*, 884 S.W.2d 674, 677 (Mo.App. 1994). "The measure of damage would be the amount a client would have received 'but for' the attorney's negligence.'" *Thiel*, 164 S.W.3d at 82 (quoting *Steward*, 945 S.W.2d at 532). " 'Damages need not be established with absolute certainty....'" *Collins*, 157 S.W.3d at 735 (quoting *Aluminum Prod. Enter., Inc. v. Fuhrmann Tooling & Mfg. Co.*, 758 S.W.2d 119, 121 (Mo.App.1988)). However, " 'reasonable certainty is still required as to both existence and amount and the evidence must not leave the matter to

---

**2.** All Rule references are to Missouri Court Rules (2009).

**3.** This element is not disputed in this matter and will not be discussed.

speculation.'" *Id.* (quoting *Aluminum Prod. Enter.*, 758 S.W.2d at 121).

 It is important to emphasize that "[a] lawyer's negligence is a question of fact, not a question of law." *Zweifel v. Zenge and Smith,* 778 S.W.2d 372, 373 (Mo.App.1989). "The rule prevails in Missouri that expert testimony is required to show legal malpractice, except in 'clear and palpable cases.'"[4] *Id.* (quoting *Cooper v. Simon,* 719 S.W.2d 463, 464 (Mo.App. 1986)). Thus, as when the "inquiry is about medical malpractice (again, except in 'clear and palpable cases,' . . .), the judge is as dependent upon expert testimony as is the jury." *Id.* at 374 (internal citations omitted).

> The same rule applies in cases of legal malpractice. Thus the lawyer charged with legal malpractice is in no better position nor in any worse position than the physician charged with medical malpractice. In the one case as in the other, the case for the professional's negligence is made out by expert testimony. If the lawyer charged with malpractice could call upon the trial judge's expertise to declare whether the lawyer's act or omission was negligent, the physician or other professional should also be able to refer the issue of his alleged negligence to a professional peer interposed between himself and the jury. All professionals, for better or for worse, are under the same rule.[5]

*Id.* Therefore, in order to escape the requirement of expert testimony, the alleged

negligence or the question of negligence, must be clear and palpable to a jury of laymen, not a trial judge, although the trial judge is considered to be an expert. *Zweifel,* 778 S.W.2d at 374. "For this purpose the trial judge sets aside his own expertise and becomes a layman, as much as if the question were one of, for example, medical malpractice." *Id.* "This does not mean that the question of a lawyer's negligence can never be a matter of law. Like any other question of fact, it may become a matter of law if reasonable men (not reasonable *lawyers*) would have no grounds in the evidence to disagree." *Id.* at 373 n. 1.

We also note that "[t]his Court's review of a summary judgment is essentially *de novo.*" *Novich,* 24 S.W.3d at 735; *see ITT Comm'l Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). "This [C]ourt does not defer to the trial court's order granting summary judgment because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law." *Johnson v. Sandler, Balkin, Hellman, & Weinstein, P.C.,* 958 S.W.2d 42, 47 (Mo.App.1997). "The record is viewed in the light most favorable to the non-movant and the non-movant is given the benefit of all reasonable inferences." *Novich,* 24 S.W.3d at 735. Thus, "[t]he moving party has the burden of establishing a right to judgment as a matter of law and that no genuine issue of material fact exists." *Johnson,* 958 S.W.2d at 47. "To enter summary

4. An example of a case which may be "clear and palpable" is where a lawyer allows the statute of limitations to expire on a claim which had been entrusted to him for prosecution. *Id.*

5. We do not imply that in certain civil proceedings, such as post-conviction relief motions involving claims of ineffective assistance of counsel, the use of reasonable "trial strate-

gy" may no longer exculpate trial counsel. As Plaintiffs have noted in their brief, these types of cases are distinguishable from cases involving legal malpractice claims because they implicate protection of Constitutional rights to effective trial counsel in a criminal setting and beneficent review of due process claims versus legal malpractice claims that are founded in common law.

judgment, the circuit court must determine that the parties are not disputing any issue of material fact and that the party seeking summary judgment is entitled to judgment as a matter of law." *Collins*, 157 S.W.3d at 731; *see* Rule 74.04(c)(6). "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question.'" *Id.* (quoting *ITT*, 854 S.W.2d at 380). "If the trial court grants summary judgment without specifying the basis upon which it was granted ...," as is the case here, "we will uphold the decision if it was appropriate under any theory." *Deer Run Prop. Owners Ass'n v. Bedell*, 52 S.W.3d 14, 17 (Mo. App.2001). Defending parties, such as Defendants,

> may make a prima facie showing, and [thereby] establish a right to summary judgment as a matter of law, by showing any one of the following: 1) facts that negate any one of the elements of [Plaintiffs'] cause of action; 2) that [Plaintiffs, as] non-moving part[ies], after an adequate period of discovery ha[ve] not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of Plaintiffs' elements; or (3) that no genuine dispute of fact exists as to each of the facts necessary to support Defendants' properly-pleaded affirmative defense.

*Rodgers*, 862 S.W.2d at 457.

In our review of Plaintiffs' points relied on, we are guided by the fact that the trial court's ruling was simply that "there is no genuine issue of material fact on any material issue and Defendants are entitled to judgment as a matter of law as to all claims asserted in the Petition." When this occurs, the trial court is "presumed to have based its decision on the grounds specified in [the motion for summary judgment] if the trial court[ ] ... does not set forth its reasoning." *Central Missouri*

*Elec. Co–op. v. Balke*, 119 S.W.3d 627, 635 (Mo.App.2003). Nevertheless, this Court is "required to sustain the trial court's order if the judgment is sustainable under any theory." *Flavan v. Cundiff*, 83 S.W.3d 18, 27 (Mo.App.2002).

■ In their first point relied on, Plaintiffs maintain the trial court erred in granting summary judgment in favor of Defendants "based on [Defendants'] defense that the actions of [Attorney] Sokol and [Attorney Sachs] constituted trial strategy decision[s] or good faith errors in judgment." Plaintiffs further maintain that not only can Defendants not assert trial strategy or good faith errors in judgment as a defense to a legal malpractice claim, but any such determination of whether there was negligence or whether it was trial strategy would be a "heavily controverted" fact subject to jury determination and not a question of law subject to determination on summary judgment.

Here, in their motion for summary judgment, Defendants had the "burden of establishing a right to judgment as a matter of law and that no genuine issue of material fact exists." *Johnson*, 958 S.W.2d at 47. They failed to meet this burden. First, in their motion for summary judgment Defendants did not expressly address the ninth allegation of attorney negligence found in Plaintiffs Petition against Defendants, to-wit: that Defendants "allowed incorrect jury instructions and a verdict form to be used[,] failed to object to the use of these instructions and verdict form[,] and failed to make a motion for a new trial on these grounds." That is to say, Defendants failed to set out any material facts which they claimed no genuine issue existed, either by pointing to pleadings, affidavits or depositions given by Attorneys Sokol, Sachs or other legal professionals relating to Defendants' professional course of conduct relative to the jury in-

structions given in the underlying trial, the verdict form used or the motion for new trial. *See* Rule 74.04(c)(1).

Second, it is our view that Plaintiffs controverted each and every factual averment set out by Defendants' motion for summary judgment. Plaintiffs established there was a genuine dispute as to the facts underlying Defendants' right to judgment. *Ritter v. BJC Barnes Jewish Christian Health Systems, etc.*, 987 S.W.2d 377, 384 (Mo.App.1999). In short, the record contains evidence of two plausible but contradictory accounts of the essential facts, thereby precluding the grant of summary judgment in favor of Defendants. *Id.* Point I has merit.

■ In their second point relied on, Plaintiffs assert the trial court erred in granting summary judgment in favor of Defendants, "based on [Defendants'] defense [that] Plaintiffs settled the underlying automobile tort case precluded proximate cause in a legal malpractice case against [Defendants]." Plaintiffs argue the issue of proximate cause was a disputed factual issue for a jury due to the "heavily disputed" "underlying facts" and their claims should not have been disposed of by summary judgment. Defendants counter in the instant appeal, as they did in their legal memorandum supporting their motion for summary judgment, that *Heartland Stores, Inc. d/b/a Shop–N–Go, Inc. v. Royal Ins. Co.*, 815 S.W.2d 39 (Mo. App.1991), controls the determination of this point and supports the trial court's grant of a summary judgment barring Plaintiffs' claims, as a matter of law, based on Plaintiffs' settlement of their claim against the sole tortfeasor found culpable by the jury.

In *Heartland,* the plaintiff ("Heartland") sued its comprehensive business insurance carrier, Royal Insurance Co. ("Royal"), contending that the attorney Royal had hired to defend Heartland's case in a personal injury action was guilty, *inter alia,* of negligence "in failing to file a motion for directed verdict at the close of all the evidence." *Id.* at 39–40. In its subsequent suit against Royal, Heartland contended that the failures of the attorney hired to represent it by Royal limited the issues which could be raised on appeal and solidified the position of the personal injury plaintiff, thus, making it necessary for Heartland to settle.[6] *Id.* at 42. "The first two counts of Heartland's suit against Royal were submitted to a jury which returned a verdict in favor of Royal," and "[t]he [trial] court entered judgment against Heartland on the third count for declaratory judgment." *Heartland,* 815 S.W.2d at 41. On review of the denial of Heartland's claim, the reviewing court affirmed the trial court's judgment determining Heartland had failed to prove any loss resulted from the failure to file the motion for directed verdict in the underlying trial. *Id.* at 42. In particular, it determined that while there was "evidence from attorneys who testified as to the consequence of the failure to file such a motion[,] but because the case was settled before the appeal was fully prosecuted, the jury would have had to resort to speculation and guesswork in order to find that damages resulted from such failure" to file the motion for directed verdict. *Id.*

Based on the reasoning in *Heartland,* Defendants in the instant matter now assert that because Plaintiffs settled "their underlying case" for less than the amount

6. The judgment in the underlying personal injury action included an award of $500,000.00 in punitive damages against Heartland which their policy did not cover.

*Id.* at 40. Heartland appealed this judgment but during the course of the appeal it settled the punitive damage claim with the personal injury plaintiff for $169,656.00. *Id.*

of the judgment before an appeal was fully prosecuted, a jury in the instant case would have to "resort to speculation and guesswork in order to find that damages resulted ...," *id.,* from the failures alleged by Plaintiffs, and that all of Plaintiffs' claims were barred as a matter of law.

It is our view that *Heartland* is clearly distinguishable on its facts from the instant matter. It lends little credence to Defendants' argument. Unlike the instant case, *Heartland* implicates a situation where a plaintiff seeks to obtain reimbursement of its damages for monies it expended *to settle a claim against it.* In analyzing *Heartland,* Judge Smart of the Western District of this Court observed in *Williams v. Preman,* 911 S.W.2d 288, 296 (Mo.App.1995), *overruled on other grounds by Klemme v. Best,* 941 S.W.2d 493 (Mo. banc 1997), that *Heartland* "illustrates that in cases where the underlying claim has been settled, the plaintiff must carry the significant burden of establishing that the settlement was necessary to mitigate the damages flowing from defendant's negligence." Judge Smart reasoned that "[i]t thus appears that, in a case where the underlying claim has been voluntarily settled, the courts are going to require a strong showing that the settlement was justified before the court will be willing to pass the cost of the settlement on to the defendant." *Id.* at 297. He further opined that

> [w]e do not agree ... that the *Heartland* case means that settlement necessarily forecloses the possibility of showing a causal link between the alleged negligence and the loss incurred by the settlement. Otherwise, the victim of the alleged malpractice is completely precluded from ever settling any underlying

claim. The public policy of Missouri favors settlements.[7]

*Id.* at 298. *Heartland* is further distinguishable in that the claim against Ms. Patterson and Shelter was never settled. That having been said, we fail to see how Plaintiffs suffered any damages resulting from Defendants' purported acts of negligence in the handling of Plaintiffs' case against Ms. Nabors. "To establish a claim for legal malpractice, a plaintiff must prove negligence and a causal connection between his or her attorney's negligence and the resulting injury." *Collins,* 157 S.W.3d at 732. "To prove damages and causation, the plaintiff must prove that, but for the attorney's negligence, the result of the underlying proceeding would have been different." *Id.*

In the instant matter, the record shows Ms. Nabors had liability coverage with Farm Bureau with policy limits of $100,000.00. The jury awarded Mrs. Roberts $156,000.00 in damages. Farm Bureau offered to settle with Plaintiffs for $96,927.64 ($100,000.00 minus payout to another party involved in the accident). Plaintiffs accepted the settlement and released Ms. Nabors, Mr. Freddie Nabors, and their insurance carrier from all claims arising from the accident in question. Saliently, Mrs. Roberts made it perfectly clear to Defendants that she did not want to pursue any further claims against Ms. Nabors for the *remaining amount* awarded by the jury. In depositions, Mrs. Roberts initially set out that she "never understood why they said I had to sue [Ms. Nabors] too because she didn't do anything. They should have just went after [Ms.] Patterson...." When asked whether she was "upset with or opposed to suing [Ms. Nabors] from the beginning" Mrs. Roberts responded, "Yeah, because she

**7.** More recently, Judge Stith in *Collins,* 157 S.W.3d at 735, reiterated that in the context of a legal malpractice claim "[s]ettlements do not necessarily preclude damage claims."

didn't do—she didn't do anything wrong. I didn't understand why she had to be sued." Also, when asked "it's also true that you *would never take a dollar out of [Ms. Nabors'] personal pocket;* is that a fair statement ...," she responded, "Why should I take something from somebody that didn't do nothing?" (Emphasis added.) When asked if she had made it clear to Attorney Sokol "that [she] didn't want anything personally out of [Ms. Nabors]," Mrs. Roberts responded in the affirmative because "[Ms. Nabors] didn't do nothing." Mrs. Roberts also related that she met with an independent lawyer in Springfield and reviewed the settlement offer with him, and after the review she decided "to go ahead and sign the settlement papers[.]" Again, when asked at depositions whether she understood that she "had a judgment in excess of the amount of money [she was] receiving from [Ms. Nabors]" and that she was "giving up that claim," Mrs. Roberts responded in the affirmative, acknowledging that she did so "voluntarily." Mrs. Roberts also stated that "everything was paid in full by [Ms. Nabors], yes." Likewise when it was explained to her that "actually, everything wasn't paid in full. The judgment was bigger than that, but you were releasing [Ms. Nabors]," Mrs. Roberts answered, "Yes." Lastly, to the question, "And so whatever you received, you understood that that's all you would ever be able to claim against either [Ms. Nabors] or her insurance company?" Mrs. Roberts answered, "Yes." As previously related, "the measure of damage would be the amount a client would have received but for the attorney's negligence." *Thiel,* 164 S.W.3d at 82 (internal quotation omitted). Mrs. Roberts has conceded Plaintiffs would not pursue the personal assets of Ms. Nabors. Given all the foregoing factual circumstances, we are unable to comprehend what further damages from Defendants the Plaintiffs would be entitled to arising out of their claims against Ms. Nabors.[8] Therefore, in so far as the trial court's grant of summary judgment may have been based solely upon Plaintiffs having settled their claims against Ms. Nabors, we uphold the trial court's grant of summary judgment in favor of Defendants. *See Deer Run Prop. Owners Ass'n,* 52 S.W.3d at 17 (where trial court grants summary judgment without specifying basis upon which it was granted, we uphold the decision if was appropriate under any theory). Point II is meritorious in part and is denied in part.

In their Point III, Plaintiffs assert the trial court erred in ruling in favor of Defendants on their motion for summary judgment, "because numerous issues of genuine material fact are disputed precluding summary judgment." The disposition of Points I and II moots Plaintiffs' Point III. *See Patterson,* 260 S.W.3d at 420 (wherein the disposition of a prior point was determinative of the appeal thereby mooting a subsequent point relied on).

The grant of summary judgment in favor of Defendants arising from their prosecution of Plaintiffs' claims against Ms. Nabors is affirmed. In all other respects, the summary judgment in favor of Defendants and against Plaintiffs arising from their prosecution of Plaintiffs' claims against Ms. Patterson and Shelter is reversed and remanded for further proceedings.

BATES and LYNCH, JJ., Concur.

---

8. Plaintiff Mr. Roberts also signed the release of all claims and forever discharged his claims against Ms. Nabors, Freddie Nabors, and Farm Bureau.